OPINION *Page 2 
{¶ 1} Defendant-appellant Benjamin Pankey appeals from the verdict entered in the Mahoning County Common Pleas Court finding him guilty of possession of crack cocaine. The issues on appeal concern the right to self-representation, sufficiency of the evidence, ineffective assistance of counsel in stipulating to a medical document containing an incriminating statement, and chain of custody. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On February 22, 2006, appellant's parole officer arrived at appellant's residence and witnessed a visitor enter through the kitchen door and then exit a minute later. The parole officer approached as appellant stood at the door. Appellant looked at his parole officer, whom he knew well, shut the kitchen door and locked it. (Tr. 192-193). The parole officer knocked and ordered appellant to admit him.
 {¶ 3} When appellant complied, he appeared "extremely nervous." (Tr. 193). The parole officer had interacted with appellant on many different occasions and the demeanor he exhibited that day was not typical. He was shaking somewhat and was stuttering a bit. (Tr. 200-201).
 {¶ 4} The parole officer noticed an Alcoholic's/Narcotic's Anonymous book on the counter within three feet of appellant. The book's cover was raised in an odd manner, and appellant did not answer when asked what was under the cover. (Tr. 193). The officer then discovered a rock of suspected crack cocaine in the book. A field test and a later laboratory test confirmed that the rock contained crack cocaine. (Tr. 194, 228).
 {¶ 5} A search of the residence was then conducted. A portable digital scale was confiscated from the kitchen cabinet. (Tr. 197). No one else was in the house at the time. (Tr. 198). The parole officer testified that, based upon the disclosures required of parolees and his observations during prior visits, he believed appellant lived there alone; although, he noted that appellant's bedroom was in the dining room rather than in an actual bedroom. (Tr. 206, 208, 219). *Page 3 
 {¶ 6} Appellant was arrested for possession of crack cocaine. The jail would not admit appellant due to his high blood pressure. Thus, he had to be transferred to the hospital for half a day. (Tr. 213). When the laboratory reported a weight of 5.06 grams for the rock of crack cocaine, appellant was indicted for third degree felony possession of crack cocaine in an amount exceeding five grams. See R.C. 2925.11(A), (C)(4)(c).
 {¶ 7} In December of 2006, appellant's trial proceeded before a jury. His brother testified for the defense that he and appellant were co-tenants on the lease, which was admitted as a joint exhibit. The brother also stated that two other individuals also lived in the residence at the time of appellant's arrest.
 {¶ 8} The jury found appellant guilty of the possession charge. The court then sentenced appellant to four years in prison. Appellant filed timely notice of appeal, and this court accepted briefs from both counsel and appellant pro se.
 COUNSEL'S ASSIGNMENT OF ERROR NUMBER ONE PRO SE ASSIGNMENT OF ERROR NUMBER TWO {¶ 9} Counsel's first assignment of error and appellant's second pro se assignment of error provide respectively:
 {¶ 10} "THE DEFENDANT/APELLANT REQUESTED THAT HE BE PERMITTED TO PROCEED PRO SE WITHOUT COUNSEL AND THE COURT FAILED TO MAKE AN INQUIRY AS TO THE WAIVER OF COUNSEL EVEN THOUGH IT ACKNOWLEDGED THE REQUEST ON THE RECORD."
 {¶ 11} "THE TRIAL COURT ERRED DENYING CONSTITUTIONAL RIGHT TO SELF REPRESENT WHEN CLEARLY AND UNEQUIVOCALLY INVOKED WELL BEFORE TRIAL."
 {¶ 12} A criminal defendant has the constitutional right to represent himself at trial. Faretta v. California (1975), 422 U.S. 806 (thrusting counsel upon the defendant against his considered desire to self-represent violates the Sixth Amendment). If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error. State v. Reed (1996), 74 Ohio St.3d 534, citingMcKaskle v. Wiggins (1984), 465 U.S. 168, 177 (deprivation of this right is not subject to harmless error review). *Page 4 
 {¶ 13} However, "ensuring the opportunity to consult with counsel does not force counsel upon an unwilling pro se defendant, but rather gives the defendant a chance to seek advice before waiving a fundamental right." State v. Reese, 106 Ohio St.3d 65, 2006-Ohio-3806, ¶ 17
(addressing a statute). Moreover, the defendant's invocation of his right to self-representation must be clear and unequivocal. State v.Cassanno, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 35, 38.
 {¶ 14} Appellant points out that he invoked his right to represent himself at the arraignment, in a pro se motion and at the pretrial/status hearing. He complains that the court failed to inquire as to his waiver and violated his right to represent himself.
 {¶ 15} The arraignment was conducted via videoconference from the jail. An attorney helped appellant present his indigency affidavit to the court from jail. The court then provided another attorney, who happened to be present in person in the courtroom, as court-appointed counsel. The following discussion occurred:
 {¶ 16} "THE DEFENDANT: I am asking that I be pro se. I am not even asking for public counsel.
 {¶ 17} "THE COURT: Try that again.
 {¶ 18} "THE DEFENDANT: I am not asking or requesting public counsel or a public defender. I prefer to be pro se, representing myself.
 {¶ 19} "THE COURT: Okay. Well, when you do, you let me know. In the interim you are up.
 {¶ 20} "MR. LACZKO: Thank you, Your Honor.
 {¶ 21} "THE COURT: Do you have anything you want to say?
 {¶ 22} "MR. LACZKO: No, I will go see him at the jail." (Argnmt. Tr. 5).
 {¶ 23} It almost seems as though the court misheard appellant's request and believed appellant said he was thinking about representing himself. The state's brief characterizes the arraigning court's lack of action as properly deferring the decision to the court ultimately assigned to hear appellant's trial, and at oral argument, the state noted that courts do not address motions at arraignment. Either way, appellant's request was eventually addressed when raised to the assigned trial court.
 {¶ 24} For instance, appellant filed a pro se motion for clarification reiterating his request to represent himself. Counsel had it time-stamped for appellant at the *Page 5 
pretrial where appellant orally pointed out that he told the arraigning court that he did not want a lawyer. He then asked, "I don't have a right to not have a lawyer?" The court responded: "Well, if you would like to represent yourself, I guess you have the constitutional right to do so, but I will have you evaluated to make sure you're competent to represent yourself." (Status Hrg. Tr. 4).
 {¶ 25} After some discussion about his background, appellant disclosed that he does not trust public defenders since they previously convinced him to plead guilty to a life sentence over thirty years ago for which he is still on parole. (Status Hrg. Tr. 8). The court stated that appointed counsel is a good defense attorney, that he drives the court crazy trying to get defendants off on technicalities and that he represents many people on death row. (Status Hrg. Tr. 8-9). Appellant replied that counsel seemed nice and noted that he was surprisingly pleased that counsel visited him in jail the prior night. (Status Hrg. Tr. 9).
 {¶ 26} The court then asked, "Why don't you let me keep [counsel] on for right now and let [the prosecutor] and [counsel] talk a little bit. We'll go from there. All right." (Status Hrg. Tr. 9-10). Finally, the court noted that trial was set for the next day but that if a continuance was desired to resolve the issue, the court would grant thirty days, which it then did on the defense's motion.
 {¶ 27} As appellant points out, a valid waiver of the right to counsel requires the trial court to make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes his right. State v. Gibson (1976), 45 Ohio St.2d 366, paragraph two of syllabus. See, also, Crim. R. 44(A). However, there was no need for the court to ensure the particulars of appellant's state of mind regarding the waiver until it was definitively readvised that defendant still wished to proceed without counsel after hearing the court's advice. Contrary to the suggestion in counsel's brief, the court's mentioning that a competency evaluation would be completed before appellant could represent himself did not bind the court to order a competency evaluation in the absence of a further request to proceed pro se.
 {¶ 28} The court heard appellant's reason for wishing to represent himself and believed that his distrust could be overcome by the particular appointed counsel about whom appellant expressed positive opinions. Upon considering his reasons and *Page 6 
reassuring him about his current counsel, the court reasonably provided him with more time within which he could reconsider his request.
 {¶ 29} As the state points out, the issue was apparently resolved between appellant and counsel as no further request was made. That is, after the court asked if he would maintain counsel, appellant never retorted at the pretrial. Rather, he acquiesced in the court's suggestion, which was not couched in compulsory language and which clearly left the topic open for objection. Thus, although his initial request may have been clear, he equivocated upon the court's assurances. See Cassanno, 96 Ohio St.3d 94 at ¶ 35, 38. Thereafter, he never filed an additional request to reinvoke his right.
 {¶ 30} Furthermore, he proceeded through trial without expressing any intent to represent himself. In fact, at sentencing, which occurred immediately after trial, counsel voiced that appellant wished to have counsel appointed for purposes of appeal. (Tr. 317).
 {¶ 31} We conclude that this is not a case of "compulsory counsel." See Faretta, 422 U.S. at 833. Based upon the particular circumstances existing here, the trial court did not violate appellant's right to represent himself. As such, these assignments of error are overruled.
 PRO SE ASSIGNMENT OF ERROR NUMBER ONE {¶ 32} Appellant's first pro se assignment of error contends:
 {¶ 33} "THE TRIAL COURT ERRED DENYING RULE 29 MOTION TO ACQUIT WHERE THE CHARGE WAS NOT SUBSTANTIATED BY LEGALLY SUFFICIENT EVIDENCE."
 {¶ 34} Sufficiency is a legal test dealing with adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386 (as opposed to weight of the evidence which entails weighing and credibility determinations). A conviction will not be reversed on grounds that the evidence was insufficient unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. State v. Goff (1998),82 Ohio St.3d 123, 138. In other words, the evidence is sufficient if, upon viewing the evidence most favorably to the state, reasonable minds can reach *Page 7 
different conclusions as to whether each element has been proven beyond a reasonable doubt. Carter, 72 Ohio St.3d at 553; State v.Bridgeman (1978), 55 Ohio St.2d 261, 263. An appellate court reviews a denial of a Crim. R. 29 motion for acquittal using the same standard employed in reviewing a jury verdict for sufficiency of the evidence.State v. Carter (1995), 72 Ohio St.3d 545, 553. See, also, State v.Mayas (Dec. 6, 2000), 7th Dist. No. 98JE14.
 {¶ 35} The elements of appellant's offense are knowingly obtaining, possessing or using five grams or more of crack cocaine. R.C. 2925.11(A), (C)(4)(c). At trial, the state alleged that he possessed the crack cocaine because he lived there alone, he was standing by the crack, and the circumstances were suspicious. Appellant argues that there was insufficient evidence that he knowingly possessed the crack cocaine.
 {¶ 36} Factually, he disputes the parole officer's testimony that he lived alone by pointing to the defense evidence that his brother's name was also on the lease. Moreover, his brother testified that he stayed there on occasion and that he collected rent from two additional individuals who occupied the two bedrooms. Appellant also notes the parole officer's admission that appellant's bedroom was in the dining room.
 {¶ 37} Legally, appellant concludes that there is no evidence that he had control over the crack cocaine and urges that possession may not be inferred from mere access to the drug through occupation of the premises. He focuses on the following statutory language and case law holdings:
 {¶ 38} "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 39} "The mere fact that one is the owner or lessee of premises upon which narcotics are found-where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessible to all tenants-is not, without further evidence, sufficient to establish possession in the owner or lessee.
 {¶ 40} "Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt." State v. Haynes (1971), 25 Ohio St.2d 264, 270. *Page 8 
 {¶ 41} "[T]he mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object." State v. Hankerson (1982), 70 Ohio St.2d 87, 91.
 {¶ 42} Haynes dealt with a case where the police found drugs in a residence leased by appellant but occupied by others as well. The Supreme Court found insufficient evidence in that case. However,Haynes is distinguishable on various important grounds. For instance, the defendant there was not only absent at the time of the search but had not occupied the premises for a week prior to the search. On the contrary, appellant still occupied his residence and was standing mere feet from the crack, which was sitting on the kitchen counter in an oddly propped book. No one else was present at the time. Moreover, the only evidence presented in Haynes was that the defendant's name was on the lease and that he moved out a week before the search. Here, the state presented evidence that a man had visited appellant for a mere minute, appellant then shut and locked the door as he watched his parole officer approach, and upon opening the door, appellant seemed extremely nervous as he stood next to the rock of crack.
 {¶ 43} Besides distinguishing Haynes, we point to other general law relevant herein. For instance, knowing possession can either be established by evidence that the defendant actually knowingly possessed the substance or by proof that he knowingly had control over the substance. Haynes, 25 Ohio St.2d at 269-270. Thus, physical possession is not required where there is constructive possession. See id. See, also, Hankerson, 70 Ohio St.2d at 91 (dominion and control satisfies possession).
 {¶ 44} Furthermore, a defendant can be convicted based on circumstantial evidence. State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046, ¶ 75 ("We have `long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt'."). "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." State v. Jenks (1991), 61 Ohio St.3d 259, ¶ 1 of syllabus. In fact, when the *Page 9 
state relies upon circumstantial evidence to prove an essential element, "there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." Id.
 {¶ 45} This court has recently stated, "readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs." State v. Barker, 7th Dist. No. 05JE21,2006-Ohio-1472, ¶ 78 (distinguishing Haynes because defendant was present during search), quoting State v. Kobi (1997),122 Ohio App.3d 160, 174. See, also, State v. Carter (May 30, 2000), 7th Dist. No. 97JE24 (constructive possession of drugs where alone with drugs in close proximity).
 {¶ 46} In the case at bar, the parole officer's description of appellant's demeanor (stuttering and shaking) can lead one to believe that appellant was in fact extremely nervous and that the reason for his nervous condition was the rock of crack sitting on the counter. (Tr. 193, 200). Contrary to appellant's suggestion, the fact that he was thereafter found to be suffering from high blood pressure does not require a finding that it was only the high blood pressure that caused him to look nervous rather than his fear of being caught with the crack cocaine. As the state notes, the stress of his parole officer's discovery of the crack cocaine, his arrest and his accompanying knowledge that his parole would inevitably be violated could have triggered his high blood pressure. There is also the telling fact that he shut and locked the door in his parole officer's face as another individual was leaving from his brief visit. (Tr. 191-193). This act implies both nerves and the need to garner an extra few seconds in which to attempt to hide what may have been his recent purchase.
 {¶ 47} In addition, the parole officer testified that in his numerous encounters with appellant, there never appeared to be anyone else living in appellant's residence. (Tr. 208). He noted that appellant had a duty to disclose any housemates and that he did not do so. (Tr. 219). The claim of appellant's brother that two other individuals lived in the residence could have rationally been disbelieved by the jury. His brother himself had not stayed there in a week and only occasionally stayed in any case. Regardless, appellant was the only one home at the time, and he was acting *Page 10 
extremely nervous within feet of the crack which was sitting on the kitchen counter poorly concealed within a book.
 {¶ 48} Viewing the evidence in the light most favorably to the state, we cannot say that no rational person could find him guilty of knowing possession of crack cocaine. As such, this assignment of error is without merit.
 COUNSEL'S ASSIGNMENT OF ERROR NUMBER TWO PRO SE ASSIGNMENT OF ERROR NUMBER THREE {¶ 49} Counsel's second assignment of error and appellant's third pro se assignment of error state respectively:
 {¶ 50} "COUNSEL FOR DEFENDANT WAS INSUFFICIENT IN THAT HE STIPULATED TO A MEDICAL DOCUMENT THAT CONTAINED A STATEMENT OF THE DEFENDANT THAT DIRECTLY IMPLIED GUILT."
 {¶ 51} "THE TRIAL COURT ERRED ALLOWING PREJUDICIAL READING OF AN UNSWORN, UNRELATED DOCUMENT AT REBUTTAL CLOSING ARGUMENT."
 {¶ 52} By way of background, we note that appellant filed a pro se motion to subpoena the jail's medical records and the testimony of jail nurse Terri Rogers, whom he said he met upon his arrest. Alternatively, he asked the state to stipulate to the severity of his hypertension at the time of his arrest. He wished to establish that he was critically ill in order to explain away the parole officer's claim that he appeared nervous.
 {¶ 53} Counsel later listed this nurse and the jail medical records in reciprocal discovery. The nurse and the jail's custodian of records were then subpoenaed for trial by the defense. Service upon the nurse failed as she no longer worked at the jail. The jail's medical records were produced, and included within them were progress notes. The progress notes report what appellant stated about his condition after he returned to the jail from the hospital.
 {¶ 54} At trial, no testimony was presented regarding appellant's medical condition other than the parole officer's statements on cross-examination that the jail would not admit appellant due to high blood pressure so they drove appellant to the hospital for treatment prior to securing his admission to jail. (Tr. 213-216, 245-246). At the close of the state's case, an off-the-record discussion was held. The court then reviewed the exhibits. (Tr. 247-248). The state moved to admit the jail records, and *Page 11 
they were marked as State's Exhibit Seven without objection. (Tr. 248). The hospital's medical records were admitted as a joint exhibit. (Tr. 248).
 {¶ 55} Later, in closing arguments, the prosecutor stated in pertinent part:
 {¶ 56} "* * * you're going to hear that perhaps Benjamin was acting that way or appeared to be nervous because of the high blood pressure. You heard some talk about high blood pressure and the fact that he went to the hospital. You're going to get some medical records that you didn't hear testimony about that are going to be stipulated to. You're going to review those and see that his blood pressure was elevated. You're going to have to look at the cause and effect. * * *
 {¶ 57} "I would like to point out to you since there wasn't testimony regarding these documents — this is State's Exhibit 7 (indicating) that you'll have while you're deliberating. I ask you to read that. These are some notes that were made during Benjamin's treatment, particularly on the first page, statement that was made by Benjamin —
 {¶ 58} "[Defense]: Objection.
 {¶ 59} "THE COURT: Overruled. It is stipulated to.
 {¶ 60} "[The state]: Statement reads: They couldn't get my BP to come down. They kept giving me medicine that's why I was there so long. I guess it was good I got caught. They said I could have had a heart attack or stroke.'
 {¶ 61} "I guess it was good I got caught. * * *." (Tr. 275-277).
 {¶ 62} Appellate counsel argues that trial counsel's original failure to object and thus stipulation to admission of the jail's medical records constituted ineffective assistance of counsel. Counsel argues that appellant's statement in the notes can be read as an admission of guilt and that it was unduly prejudicial as the other evidence was not overwhelming. Appellant's pro se brief adds an argument that the prosecutor cannot comment on facts not in evidence. He contends that the statement is inadmissible hearsay. He also urges that the statement was unrelated to the charges and referred only to the medical professionals "catching" his condition not the parole officer "catching" him engaged in a crime. Thus, he concludes that the nurse's testimony was required to explain the context of the seemingly incriminating statement. *Page 12 
 {¶ 63} Initially, the state counters that appellant's own statement within the report is not hearsay because it constitutes an admission by a party opponent under Evid. R. 801(D)(2). As for the jail notes themselves, the state responds that Evid. R. 803(4) provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule regardless of the declarant's availability.
 {¶ 64} In any case, the records were admitted without objection. Thus, hearsay is not at issue and neither is prosecutorial misconduct or trial court error for allowing comments on facts not in evidence. That is, the facts were in evidence because the exhibit was admitted, without objection for that matter. This leaves us with the question of whether counsel's failure to object to admission of the exhibit constituted ineffective assistance of counsel.
 {¶ 65} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687; State v. Reynolds (1998),80 Ohio St.3d 670, 674. Deficiency can be demonstrated only by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Id. The defendant must thus establish that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Sallie
(1998), 81 Ohio St.3d 673, 674. Judicial scrutiny of counsel's conduct is highly deferential and presumes that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, when reviewing counsel's performance, courts must refrain from second-guessing strategic decisions. Sallie, 81 Ohio St.3d at 674.
 {¶ 66} Prejudice can be demonstrated by showing that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Reynolds, 80 Ohio St.3d at 674. A reasonable probability is one sufficient to undermine the court's confidence in the outcome of the case. State v. Bradley (1989),42 Ohio St.3d 136, 142. The defendant bears the burden of proving both deficiency and prejudice. State v. Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 67} Here, counsel's decision to refrain from objecting to the admission of the jail medical records and/or failure to call the nurse can be categorized as tactical *Page 13 
decisions. Although upon objection, the court may have required authentication by a custodian, which the state could have easily obtained, the court could then have used its discretion to admit the records without the nurse's testimony. This was mentioned above in reviewing the state's arguments. See Evid. R. 801(D)(2) (admission by party opponent); Evid. R. 803(4) (medical records).
 {¶ 68} Moreover, contrary to appellant's contention, the nurse's actual testimony may not have placed his statement in the innocent context he now anticipates. Rather, her testimony may have placed appellant's statement in an even more unflattering light. In any case, counsel is permitted to stipulate to records in order to avoid a long trial drawn out merely for presentation of the testimony of custodians and note-takers who may have nothing to add other than what their notes state.
 {¶ 69} This court has held that it is not ineffective assistance of counsel to stipulate to the admissibility of a report rather than requiring an expert to testify. See State v. Beach, 7th Dist. No. 03MA2,2003-Ohio-6546, ¶ 19-20 (regarding a competency report). More on point, the Ohio Supreme Court has held:
 {¶ 70} "Moreover, counsel [was] not ineffective in stipulating that Dr. Bergman `would be qualified as an expert and she would testify in accordance with her report.' The state would have likely called Dr. Bergman as a witness if the defense had not agreed to stipulate. By stipulating, the defense avoided the danger of reiterating the state's evidence and eliciting further expert testimony that might be damaging. Thus, counsel's action was a `legitimate tactical decision' that does not constitute ineffective assistance of counsel. See State v.Foust, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 90;State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 121-123." State v. Ferguson, 108 Ohio St.3d 451, 2006-Ohio-1502, ¶ 81.
 {¶ 71} This holding further justifies upholding counsel's decision to allow the jail medical records in without objection and without calling the nurse to testify. Although counsel could have made the state's job a bit harder by objecting, there is no indication that an objection would have resulted in exclusion of the jail medical records. Additionally, the defense strategy chosen by appellant himself was to show that he was nearly suffering a heart attack when the parole officer came to his door in *Page 14 
order to explain away the officer's description of appellant as "extremely nervous." In other words, the officer's description of appellant's condition was a key component in the state's constructive possession case, which appellant decided to rebut with evidence of his medical condition; such evidence was contained in both the hospital records and the jail records. As such, we cannot say that counsel rendered ineffective assistance of counsel in this regard.
 {¶ 72} Any remaining arguments appellant mentions in his pro se brief depend on facts outside the record and thus cannot be addressed in the direct appeal. See State v. Ishmail (1978), 54 Ohio St.2d 402, ¶ 1 of syllabus. See, also, State v. Madrigal (2000), 87 Ohio St.3d 378,390-391 (ineffective assistance argument in direct appeal cannot require viewing facts outside trial court record). For all of the above reasons, these assignments of error are overruled.
 PRO SE ASSIGNMENT OF ERROR NUMBER FOUR {¶ 73} Appellant's fourth and final pro se assignment of error alleges:
 {¶ 74} "THE TRIAL COURT ERRED ALLOWING ADMISSION OF THE DRUGS WHERE PLAINTIFF FAILED TO ESTABLISH PROPER CHAIN OF CUSTODY OF DRUG SEIZED FROM THE SCENE * * *."
 {¶ 75} In his final assignment of error, appellant contends that the record fails to show a continuous chain of custody from the moment of arrest until the laboratory test. He emphasizes that a perfect chain of custody is even more critical where the rock weighed just .06 grams over the five gram threshold for a higher degree of felony.
 {¶ 76} The authentication rule for admitting evidence "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). Testimony by a witness with knowledge "that a matter is what it is claimed to be" is an acceptable method of authentication. Evid. R. 901(B)(1). Consequently, the state is "not required to prove a perfect, unbroken chain of custody." State v.Keene (1998), 81 Ohio St.3d 646, 662. A broken chain goes to the weight, rather than the admissibility, of the evidence. State v. Franklin,97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 43, citing State v. Richey (1992),64 Ohio St.3d 353, 360.
 {¶ 77} Here, authentication under Evid. R. 901 was established. First, Officer O'Malley testified that he confiscated the rock from the book on the kitchen counter. *Page 15 
(Tr. 193). He called Officer Kaschak to conduct the field test. Officer Kaschak testified that he conducted the field test and then placed the rock in the evidence bag and sealed it. (Tr. 239).
 {¶ 78} Officer O'Malley signed as a witness to the test, and he signed the chain of custody log identified as State's Exhibit Three. (Tr. 195, 199-200). He explained that the purpose of the chain of custody log was to verify who took the substance in or out of the property room. (Tr. 199). He testified that the names in the log were his, Officer Kaschak's and the property room manager's. (Tr. 200).
 {¶ 79} Officer Kaschak confirmed that State's Exhibit Three was the property tag that establishes the chain of custody. He further explained that the exhibit showed that he received the rock, identified as State's Exhibit Five, from Officer O'Malley. (Tr. 241-242). He also testified that the exhibit demonstrated that he transported the rock to and from the laboratory and to court that morning. (Tr. 242, 246). Finally, although appellant does not contest what happened after the evidence reached the laboratory, the BCI forensic scientist testified that he tested the crack which had a unique identifying number and a submission sheet with signatures showing that the crack presented at trial was the crack submitted for testing. (Tr. 225, 228-229).
 {¶ 80} Accordingly, the chain of custody was properly established, and the rock was established to be the one confiscated from appellant's counter. Even appellant had established the chain was broken and even if appellant believed tampering existed, such issues must be presented to the jury who determines how much weight to place on the identification of the substance.
 {¶ 81} We also note that there was no objection voiced to the admissibility of the state's evidence and thus no chain of custody argument was raised below. Thus, the issue was waived absent the appellate court's recognition of plain error. State v. Drummond,111 Ohio St.3d 14, 2006-Ohio-1038, ¶ 187 (failure to authenticate and establish chain of custody for 911 tape was held to be waived by capital defendant where he failed to raise it at trial); State v. Nolan,98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62 (decision to correct plain error is discretionary). There is no plain error here. This assignment of error is overruled. *Page 16 
 {¶ 82} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1