OPINION *Page 2 
{¶ 1} Appellant, Raymont A. Nichols, appeals his conviction on a single count of possession of drugs, in violation of R.C. 2925.11(A) and (C)(4)(e), a felony of the first degree. Appellant contends that the trial court erred in admitting two pages of a police report into evidence, and that there was insufficient evidence adduced at trial to support the verdict. Because the admission of the police report constituted harmless error, and the facts taken in a light most favorable to the prosecution establish that Appellant was in constructive possession of crack cocaine, his assignments of error are overruled.
 {¶ 2} The following facts are taken from the trial testimony of Officer Jeffrey Kamerer of the Wells Township Police Department unless otherwise noted. On July 4, 2007, at approximately 3:00 a.m., Kamerer began following a red Jeep traveling northbound on State Route 7 between Brilliant and Mingo Junction traveling at 70 miles an hour. (Trial Tr., p. 78.) Because the posted speed limit was 55 miles per hour, Kamerer executed a traffic stop. (Trial Tr., p. 79.)
 {¶ 3} While speaking with Appellant, who was the driver of the Jeep, Kamerer noticed that his passenger, Theodis Draper (Appellant's cousin), was nervous and kept putting his hands in his pockets. (Trial Tr., p. 79.) While waiting for a response from the dispatcher on the status of Appellant's drivers' license, Appellant blurted out, "[t]here's no drugs in this car." (Trial Tr., pp. 78-79.) Kamerer asked Appellant whether there were, indeed, drugs in the car, but Appellant responded that there were not. (Trial Tr., pp. 79-80.) Kamerer then asked Draper if there were any drugs *Page 3 
in the car, and Draper responded, "[t]hat's for me to know and you to find [out]." (Trial Tr., p. 80.)
 {¶ 4} As a consequence, Kamerer contacted Lieutenant Christopher Taylor of the Mingo Junction Police Department for assistance. (Trial Tr., p. 81.) Taylor arrived with a canine that was trained and certified by the State of Ohio for drug detection. (Trial Tr., p. 155.) The dog was walked around the vehicle, and then scratched the undercarriage of the driver's side door. (Trial Tr., p. 84.) Kamerer asked both occupants to step out of the vehicle. He patted down both individuals, and placed them in the back of the cruiser. (Trial Tr., p. 85.) Then, Kamerer, Taylor, and a third officer, Jefferson County Sheriff's Department Deputy Christopher Vinci, searched the back cargo area of the Jeep. (Trial Tr., pp. 81, 85.)
 {¶ 5} According to Vinci, he found what he believed to be crack cocaine hidden under a pile of clothes in the back hatch of the cargo floor. (Trial Tr., p. 179.) The substance was field tested, and identified as crack cocaine, which prompted Vinci and Kamerer to continue the search. (Trial Tr., p. 81.) After moving more clothing, Vinci discovered a potpourri carpet deodorizer canister. He smelled the white powder inside, which smelled like potpourri, but the top of the canister appeared to have been cut. (Trial Tr., pp. 181-183.)
 {¶ 6} Vinci returned the canister to its original spot underneath the pile of clothes, and Taylor brought the dog through the front of the Jeep. According to Taylor, the dog worked his way to the back of the cargo area and began to scratch at the pile of clothing until the canister was uncovered. The dog scratched at the *Page 4 
canister until the top came off. (Trial Tr., pp. 166-167.) Taylor dumped the canister onto a piece of cardboard, which revealed a plastic bag containing a baseball-sized piece of what he believed was crack cocaine. (Trial Tr., p. 168.)
 {¶ 7} According to Kamerer, after the canister was discovered and seized, Appellant exclaimed, "[t]hat's not my dope. That's Draper's dope." (Trial Tr., pp. 107-108.) While seated in the back of Kamerer's cruiser, Draper said to him, "[f]uck you" and "[f]uck you and the dope." (Trial Tr., p. 109.) Kamerer and Vinci handcuffed Appellant and Draper, read them their Miranda warnings, and transported them to the Jefferson County Justice Center. (Trial Tr., p. 110.)
 {¶ 8} Later in the day, Kamerer returned to the Justice Center and received a written waiver of Appellant's Miranda rights. (Trial Tr., pp. 113-114.) Because he had difficulty writing, Appellant chose to provide an oral statement, which was neither videotaped nor recorded. (Trial Tr., pp. 116, 143.) Kamerer did not preserve his notes. (Trial Tr., p. 143.)
 {¶ 9} According to Kamerer's testimony, while at Draper's house, Draper asked Appellant to drive him to Steubenville. (Trial Tr., p. 114.) Appellant watched as Draper cut the top off of a carpet deodorizer bottle and concealed crack cocaine in the canister. Draper promised to give Appellant gas money to take him and the drugs to Steubenville. (Trial Tr., p. 115.) When Kamerer signaled the Jeep to pull over, Draper instructed Appellant to flee so he could discard the crack cocaine, however, Appellant refused and pulled over. (Trial Tr., pp. 114-115.) *Page 5 
 {¶ 10} One week later, following a preliminary hearing, Kamerer conducted a second interview with Appellant at Appellant's request. (Trial Tr., pp. 122-123.) Appellant, who specifically asked to be interviewed outside the presence of Draper, executed a second written waiver of his Miranda rights. (Trial Tr., pp. 124-125.) Because Appellant could not write his own statement, Melissa Rath, a dispatcher for the Jefferson County Sheriff's Department, memorialized Appellant's statement. (Trial Tr., p. 127.)
 {¶ 11} According to the written statement, Draper asked Appellant to ride with him to Steubenville. (Trial Tr., p. 127.) Appellant only became aware of the crack cocaine when he asked Draper if there were drugs in the car while they were stopped at a gas station in Bridgeport, Ohio, approximately twenty minutes away from Steubenville. (Trial Tr., p. 128.) Draper answered "yes." Appellant responded, "[o]h, shit," and expressed hope that the men would not get pulled over by the police. Appellant asked where the drugs were located in the car, and Draper responded that they were in the back in a carpet deodorizer bottle. Appellant's written statement was admitted into evidence without objection. (Trial Tr., pp. 129-130.)
 {¶ 12} Defense counsel argued at trial that Kamerer fabricated the first confession in order to assure a conviction. He underscored the fact that, in the second confession, Appellant did not know about the drugs until the men were approximately twenty minutes away from their destination. The state countered that, even if the jury believed that Kamerer had manufactured the first confession, *Page 6 
Appellant's written statement, in and of itself, constituted a confession to the essential elements of drug possession.
 Assignment of Error Number One {¶ 13} "THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION IN ADMITTING PORTIONS OF A POLICE REPORT OVER THE TIMELY OBJECTIONS OF DEFENSE COUNSEL."
 {¶ 14} Appellant argues that pages seven and eight of the police report admitted at trial constituted hearsay and should have been excluded pursuant to Evid. R. 803(8). However, at trial, defense counsel objected to the admission of pages seven and eight of the police report because they were improperly authenticated and they were cumulative in nature, "in that the information contained in them is almost identical to the testimony of Lieutenant Taylor and Deputy Vinci." (Trial Tr., p. 213.) Therefore, Appellant's first assignment of error is premised upon grounds not raised at trial.
 {¶ 15} Evid. R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. If the ruling admits evidence, a timely objection or motion to strike must appear of record stating the specific ground of objection, if the specific ground was not apparent. When a party makes a specific objection to the admission of evidence on one ground, he waives all other objections on appeal. Walton v. Bengala (September 10, 2001), 7th Dist. No. 00-CA-8, *3. Accordingly, we review the trial court's ruling admitting pages seven and eight of the police report for plain error. *Page 7 
 {¶ 16} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Under Crim. R. 52(B), the reviewing court must determine that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 17} In criminal cases, Evid. R. 803(8)(b) excludes from the public records and reports exception to hearsay police reports that, "recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities." State v. Ward (1984),15 Ohio St.3d 355, 358, 474 N.E.2d 300.
 {¶ 18} Appellant cites a number of Ohio appellate decisions for the proposition that police reports that summarize unrecorded statements made by a defendant in a police interview are not admissible pursuant to Evid. R. 803(8). However, in all of the cases cited by Appellant, the admission of the police reports was ultimately found to constitute harmless error. See Crim. R. 52(A).
 {¶ 19} The same is true in the case sub judice. Pages seven and eight of the police report memorialize the canine search of the car and the discovery of the crack cocaine in the carpet deodorizer canister. Officers Kamerer, Taylor, and Vinci all testified at length regarding those events. Consequently, Appellant has failed to *Page 8 
demonstrate that the outcome of the trial would have been different but for the error. Accordingly, Appellant's first assignment of error is overruled.
 Assignment of Error Number Two {¶ 20} "THE JURY VERDICT OF GUILTY FOR POSSESSION OF CRACK IN EXCESS OF TWENTY-FIVE GRAMS WAS BASED UPON INSUFFICIENT EVIDENCE."
 {¶ 21} Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process.State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211.
 {¶ 22} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Therefore, an appellate court must view the evidence in a light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements *Page 9 
of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 547 N.E.2d 492; Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781.
 {¶ 23} The failure to move for an acquittal at trial does not waive an appellant's right to raise a sufficiency of the evidence argument on appeal. City of New Middletown v. Yeager, 7th Dist. No. 03 MA 104,2004-Ohio-1549, ¶ 7, citing State v. Jones, 91 Ohio St.3d 335, 346,744 N.E.2d 1163. A defendant need only enter a "not guilty" plea in order to preserve his right to object to any alleged insufficiency of the evidence. Id., citing Jones, 91 Ohio St.3d, at 346, 744 N.E.2d 1163. Moreover, a conviction based on insufficient evidence constitutes plain error. Id.
 {¶ 24} Appellant contends that his written statement establishes Draper's ownership and possession of the crack cocaine and that his refusal to flee was exculpable evidence. However, Appellant's argument conflates possession with ownership.
 {¶ 25} To prove that a defendant is guilty of possession of drugs under R.C. 2925.11(A), the state must demonstrate that he did, "knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 26} R.C. 2925.01(K) defines "possess" or "possession" as, "having control over a thing or substance, but may not be inferred solely from mere access to the *Page 10 
thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 27} In Ohio, possession may be actual or constructive. We applied the Supreme Court's definition of "constructive possession" in State v.Pankey, 7th Dist. No. 07 MA 2, 2008-Ohio-3091. "[T]he mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object." Id. at ¶ 41, quoting State v. Hankerson (1982), 70 Ohio St.2d 87, 91,434 N.E.2d 1362.
 {¶ 28} Appellant's written statement establishes that he knew the crack cocaine was in the car, and that, even though he was aware of the presence of the crack cocaine, he got back in the car at the gas station in Bridgeport and proceeded to Steubenville. Moreover, as we must accept the facts in a light most favorable to the prosecution without any regard to witness credibility, we must credit Kamerer's testimony that Appellant was aware, prior to his departure from Columbus, that Draper had concealed the drugs in the carpet deodorizer canister, and that he put it in the car in order to deliver the crack cocaine to Steubenville.
 {¶ 29} The state was not required to establish that Appellant owned the drugs, merely that they were in his constructive possession.State v. Capretta, 8th Dist. No. 88986, 2008-Ohio-138, ¶ 12; see alsoState v. Correa (May 15, 1997), 8th Dist. No. 70744 (defendant found to constructively possess drugs that were discovered on individual with whom he had close contact). Thus, there was sufficient evidence *Page 11 
adduced at trial to establish that Appellant was guilty of drug possession. Appellant's second assignment of error is overruled and his conviction is affirmed in full.
Donofrio, J., concurs.
Vukovich, P.J., concurs. *Page 1