[Cite as *State v. Rini*, 2013-Ohio-745.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 12CA0045-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEFFREY A. RINI | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 11CR0527 |

DECISION AND JOURNAL ENTRY

Dated: March 4, 2013

BELFANCE, Judge.

{¶1} Defendant-Appellant Jeffrey Rini appeals from his conviction in the Medina County Court of Common Pleas. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} In September 2011, Mr. Rini was indicted on one count of trafficking in drugs within the vicinity of a juvenile in violation of R.C. 2925.03(A)(1)(C)(6)(b), a felony of the fourth degree. The matter proceeded to a bench trial, after which Mr. Rini was found guilty and sentenced to eighteen months in prison. Mr. Rini has appealed, raising six assignments of error for our review, which will be rearranged and addressed out of sequence to facilitate our review.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN NOT GRANTING MR. RINI'S RULE 29
MOTION AT THE CLOSE OF THE STATE'S CASE IN CHIEF BECAUSE
THERE WAS NOT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

{¶3} Mr. Rini asserts in his first assignment of error that the trial court erred in denying his Crim.R. 29 motion as there not sufficient evidence to support a finding of guilt. We do not agree.

{¶4} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010–Ohio–634, ¶ 33. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus. We further note that "the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not." *State v. Denny,* 9th Dist. No. 08CA0051, 2009-Ohio-3925, ¶ 12.

{¶5} Mr. Rini was found guilty of violating R.C. 2925.03(A)(1)(C)(6)(b). R.C. 2925.03(A)(1) states that, "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" R.C. 2925.03(C)(6)(b) provides that

> [w]hoever violates division (A) of this section is guilty of one of the following * * * [i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows: * * * Except as otherwise provided in division (C)(6)(c), (d), (e), (f), or (g) of this section, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the fourth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Pursuant to R.C. 2925.01(BB),

> [a]n offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

{¶6} Agent John Stayrook with the Medina County Drug Task Force testified that, on August 25, 2011, he was the case agent investigating a claim by a confidential informant that the informant could buy heroin from Jennifer Neuendorff. Agent Stayrook was working with Agent Eric Bors, who was undercover. Agent Bors went with the confidential informant to Jennifer Neuendorff's residence on Elmwood in Medina, Ohio. Ms. Neuendorff lived in the top portion of a duplex, and Mr. Rini lived in the bottom portion. The confidential informant was to introduce Agent Bors to Ms. Neuendorff, and Agent Bors was to conduct the transaction. Agent Stayrook followed Agent Bors and the informant to Ms. Neuendorff's residence. Agent Stayrook's role was surveillance and listening to the audio being recorded by a device on Agent Bors. In addition, Agent Bors had a covert device that recorded audio and video. Agent Bors

was provided with $200 to buy heroin. From his position, Agent Stayrook observed a GMC van being driven by Mr. Rini pull in to the residence with an unknown female in the passenger seat.

{¶7} Agent Bors testified that he was briefed that Ms. Neuendorff would be his initial contact, that there was an additional contact below Ms. Neuendorff in the same house, and that there had been multiple complaints on possible trafficking with respect to the additional contact. Agent Bors testified that he initially planned to buy three bindles of heroin for $75. However, Agent Stayrook provided Agent Bors with $200 in case Agent Bors could acquire additional heroin.

{¶8} Agent Bors arrived at the Elmwood residence with the confidential informant and saw Ms. Neuendorff exiting the upper portion of the duplex. The two proceeded up the steps, and Ms. Neuendorff made contact with them right outside the door to her residence. The confidential source introduced Agent Bors and told Ms. Neuendorff that he was looking to buy three bindles for $75. Ms. Neuendorff indicated that she might be able to get five bindles for $100 from her source. While Agent Bors was discussing the drug purchase with Ms. Neuendorff, Ms. Neuendorff's children, who were five and six years of age, kept walking in and out of the residence. Ms. Neuendorff then made a phone call to the person Agent Bors believed was her supplier. Ms. Neuendorff indicated that she would be meeting with her neighbor who resided downstairs. After a while, a GMC van pulled into the driveway with a male driver that was positively identified as Mr. Rini and an unknown female passenger. Mr. Rini acknowledged the children and commented about them being in their underwear. Agent Bors gave Ms. Neuendorff the money, and she went downstairs to meet the vehicle. Agent Bors remained upstairs. Agent Bors averred that, "[a]s soon as she got close to the vehicle, the unidentified white female exited the passenger front seat of the car, walked around to the driver's side

window area of the car, kind of paced back and forth and Ms. Neuendorff entered the passenger front seat of the vehicle." Agent Bors observed Ms. Neuendorff give Mr. Rini money and saw "an exchange hand to hand[,]" but could not see what Mr. Rini gave Ms. Neuendorff. Ms. Neuendorff walked back upstairs and said that her source did not have the five bindles for $100 but would be getting more, and then Ms. Neuendorff handed Agent Bors the folded up pieces of paper that were later determined to contain heroin. Agent Bors indicated a desire to purchase more heroin, and they exchanged phone numbers. As soon as Ms. Neuendorff exited Mr. Rini's vehicle, the van began to leave. Shortly after, Mr. Rini pulled back into the driveway, rolled down his window, and stated that a marked car followed him and that there were other suspicious vehicles in the area. After the transaction was complete, Agent Bors gave Agent Stayrook four bindles containing heroin. At trial, the parties stipulated to the BCI report confirming that the substance in the bindles was heroin.

{¶9} In addition to the above testimony, the audio and video surveillance footage was submitted into evidence as well as two phone calls between Ms. Neuendorff and the confidential informant.

{¶10} Viewing the evidence in a light most favorable to the State, we conclude that sufficient evidence was presented, if believed, from which a trier of fact could find beyond a reasonable doubt that Mr. Rini knowingly sold heroin in the vicinity of a juvenile. Agent Bors provided Ms. Neuendorff with money. Ms. Neuendorff went downstairs and met Mr. Rini, Agent Bors observed a hand-to-hand transaction take place between Ms. Neuendorff and Mr. Rini, and Ms. Neuendorff returned up the steps where Agent Bors was waiting and gave him four bindles of heroin. Moreover, Ms. Neuendorff's children were present and were acknowledged by Mr. Rini at the time of the drug transaction. From the above evidence, it is reasonable to

conclude that Mr. Rini sold heroin in the vicinity of a juvenile. Accordingly, Mr. Rini's second assignment of error is properly overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE IN VIOLATION OF THE OHIO RULES OF EVIDENCE, THE UNITED STATES CONSTITUTION, AND THE OHIO CONSTITUTION.

{¶11} Mr. Rini asserts in his first assignment of error that the trial court committed plain error in admitting hearsay testimony and video from Ms. Neuendorff and the confidential informant.[1] We do not agree.

{¶12} We note that Mr. Rini did not object to any of the alleged hearsay statements. Thus, Mr. Rini's assignment of error is subject to plain error review. *See State v. Rodriguez,* 9th Dist. No. 09CA009629, 2010-Ohio-400, ¶ 14; *see also* Crim.R. 52(B). Generally, to establish plain error,

> "[f]irst, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[ ]' [to the extent that it] * * * affected the outcome of the trial."

*State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, ¶ 9, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

---

[1] While Mr. Rini appears to assert that the testimony, video, and audio in question violate *Crawford v. Washington,* 541 U.S. 36 (2004), he offers no analysis or explanation of why that would be so and does not even assert or identify which evidence at issue was testimonial. In addition, it is clear that Ms. Neuendorff was brought to court and was available to testify. However, ultimately, both the State and defense counsel elected not to call her. *See State v. Hood*, Slip Opinion No. 2012-Ohio-6208, ¶ 33, quoting *Crawford* at 53-54 (noting that *Crawford* and the Sixth Amendment only "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination[]'"); *see also* App.R. 16(A)(7). We are not inclined to sua sponte speculate about Mr. Rini's general reference to *Crawford* in his merit brief.

{¶13} In reviewing the record of the proceedings below, it is evident that the State presented ample admissible evidence from which it established that, with the assistance of a confidential informant, Agent Bors contacted Ms. Neuendorff for the purpose of buying heroin. He arrived with a covert video camera which recorded audio and video and from which he recorded everything that took place. The State further established that Agent Bors gave Ms. Neuendorff money and that, after she made a phone call, they waited until a vehicle driven by Mr. Rini pulled into the driveway. Ms. Neuendorff got in the vehicle, and Agent Bors was able to watch a hand-to-hand transaction. He also watched Ms. Neuendorff exit the vehicle and return to Agent Bors, whereupon he was given heroin. We note that, because this matter involves a bench trial, there is a presumption that "the trial court 'considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *Akron v. Fowler*, 9th Dist. No. 21327, 2003-Ohio-2844, ¶ 7, quoting *State v. Post,* 32 Ohio St.3d 380, 384 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 151 (1968). Assuming the statements at issue are hearsay, Mr. Rini has not pointed to any evidence indicating that trial court considered them in finding him guilty, nor has this Court found any evidence of the same in reviewing the record.

{¶14} Assuming that the testimony referenced in Mr. Rini's merit brief constituted inadmissible hearsay, it is also evident from the proceedings that Mr. Rini's counsel intended to call Ms. Neuendorff as a witness. As a result Mr. Rini's trial counsel asked questions concerning what Ms. Neuendorff said and actually played portions of the video during cross-examination. For example, Mr. Rini asserts that the following exchange contains inadmissible hearsay:

[Mr. Rini's Counsel]: Are there any phone calls with Mr. Rini directly?

[Agent Stayrook]: There is one during the video that [Ms. Neuendorff] said she's calling him.

{¶15} To the extent Mr. Rini complains about the admission of this testimony, we see no merit to his argument. Mr. Rini's counsel posed the question, and it would seem that Mr. Rini's counsel invited any error that might be present. *See State v. Armstrong,* 152 Ohio App.3d 579, 2003-Ohio-2154, ¶ 41 (9th Dist.). Mr. Rini's argument is similarly hampered with respect to the portions of the video and accompanying audio that Mr. Rini's counsel replayed during the cross-examination of Agent Bors.

{¶16} Mr. Rini points to other instances in the transcript that he believes constitute inadmissible hearsay. He asserts that the statements were admitted "to prove Mr. Rini was speaking with Ms. Neuendorff on the phone and that Mr. Rini had agreed to make a drug transaction with her[,]" and that they were vital to the State's case. Mr. Rini argues that the "only thing that ties Mr. Rini to the drug trafficking is Ms. Neuendorff['s] statements." Even assuming that all the statements at issue were inadmissible hearsay, we cannot say that their admission affected the outcome of the trial. *See Hardges,* 2008-Ohio-5567, at ¶ 9, quoting *Barnes,* 94 Ohio St3d at 27. As noted above, Agent Bors was present for the transaction and testified to what he observed. There is no assertion that Agent Bors' description of his participation in the transaction or his observations of it would somehow constitute hearsay. Nor is there any argument that Mr. Rini's own statements would be inadmissible. Agent Bors' testimony about his observations and participation in the events provided ample circumstantial evidence that Mr. Rini sold heroin in the vicinity of juveniles. Moreover, the concern Mr. Rini expressed to Agent Bors about police being in the area, provides additional circumstantial evidence that Mr. Rini was involved in the drug transaction. We cannot say that the admission of the testimony, video with audio and phone calls concerning the details and setup of the transaction affected the outcome of the trial.

{¶17} In light of all of the foregoing, and given Mr. Rini's limited argument, we cannot say that the trial court committed plain error in admitting the evidence it did, nor is there evidence that the trial court relied on inadmissible evidence in reaching its determination. Mr. Rini's first assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT JEFFREY RINI VIOLATED OHIO REVISED CODE SECTION 2925.03(A)(1).

{¶18} Mr. Rini asserts in his third assignment of error that the trial court's finding of guilt was against the manifest weight of the evidence. We do not agree.

{¶19} In reviewing a challenge to the weight of the evidence, the appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶20} Mr. Rini raises similar issues to those discussed in his first and second assignments of error. He focuses on the fact that Agent Bors did not see what Mr. Rini gave to Ms. Neuendorff in the hand-to-hand transaction and, thus, he argues that the weight of the evidence does not support the finding of guilt.

{¶21} At trial, Mr. Rini's counsel focused on the theory that Mr. Rini handed Ms. Neuendorff something other than drugs during the transaction. Mr. Rini's counsel pointed out to Agent Bors that, when Agent Bors and the confidential informant arrived on the scene, Ms. Neuendorff asked them for a cigarette and they did not have one. Additionally, Mr. Rini's counsel observed from the video that Ms. Neuendorff did not have a cigarette when she entered

Mr. Rini's vehicle but that she did have one when exiting. Agent Bors acknowledged it was possible that Ms. Neuendorff owed Mr. Rini money and Mr. Rini gave her something other than drugs and acknowledged that the two were neighbors. In addition, Mr. Rini's counsel brought up the fact that Mr. Rini's van had lettering on the side indicating a taxi, thereby implying an alternate theory for why Mr. Rini and Ms. Neuendorff interacted in the manner they did.

{¶22} While Mr. Rini's counsel did bring out testimony that suggested an alternate theory of the case, we cannot say after a thorough review of the record that the finding of guilt is against the manifest weight of the evidence. Ms. Neuendorff received money, took the money down to Mr. Rini's vehicle, got into the vehicle, a hand-to-hand transaction occurred, and Ms. Neuendorff returned with bindles containing heroin. All of this activity took place in the vicinity of Ms. Neuendorff's two children. While it is possible that Ms. Neuendorff had the heroin all along and was just setting Mr. Rini up, we cannot say that the trier of fact lost its way in finding that Mr. Rini sold heroin in the vicinity of a juvenile. Accordingly, Mr. Rini's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL THROUGH INEFFECTIVE REPRESENTATION.

{¶23} Mr. Rini asserts in his fourth assignment of error that he was denied his right to counsel due to his trial counsel's ineffectiveness. We do not agree.

{¶24} In order to prevail on an ineffective assistance of counsel claim, a defendant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Mundt*, 115 Ohio

St.3d 22, 2007–Ohio–4836, ¶ 62, citing *Strickland v. Washington*, 466 U.S. 668, 687–688, 694 (1984).

**{¶25}** Mr. Rini points to trial counsel's failure to object to the numerous allegedly inadmissible hearsay statements discussed in his first assignment of error as well as trial counsel's failure to object to several leading questions and the admission of testimony related to a drug overdose in the area.

**{¶26}** With respect to trial counsel's failure to object to the allegedly inadmissible hearsay, as noted above, it is apparent from the record that trial counsel anticipated that Ms. Neuendorff would be called as a witness and be subject to cross-examination, thus, likely eliminating at least some of the hearsay concerns. *See* Evid.R. 801(D)(1) (noting instances in which out of court statements are not hearsay when the declarant is subject to cross-examination). After Agent Bors finished testifying, the prosecutor stated that it was the State's understanding that the trial would be continued so that Ms. Neuendorff could be brought in to testify. Both the State and the defense indicated a desire to have Ms. Neuendorff brought in to testify. The trial was continued and a warrant for removal was filed. Nonetheless, on the day that the trial resumed, neither side opted to call Ms. Neuendorff as a witness. Thus, trial counsel's failure to object and the manner in which trial counsel questioned the State's witnesses, which directly referenced, and in some instances replayed, the now objected to testimony, appears to be trial strategy. *See State v. Carter*, 72 Ohio St.3d 545, 558 (1995) ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). While we

are uncertain based upon the record why trial counsel opted not to call Ms. Neuendorff where it is obvious that such was intended previously, there is nothing which indicates that that decision was not also part of trial counsel's strategy. *See State v. Treesh,* 90 Ohio St.3d 460, 490 (2001) ("Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.").

{¶27} With respect to any possible remaining hearsay issues, the leading questions, and the introduction of testimony concerning an overdose in the area, Mr. Rini has not convinced us that there is a reasonable probability that the outcome of the trial would have been different if counsel would have proceeded differently. *See Mundt*, 115 Ohio St.3d 22, 2007–Ohio–4836, at ¶ 62, citing *Strickland*, 466 U.S. at 687–688, 694. Accordingly, we overrule Mr. Rini's fourth assignment of error.

## ASSIGNMENT OF ERROR V

THE COURT FAILED TO INSTRUCT THE DEFENDANT AT SENTENCING
OF THE POSSIBLE IMPOSITION OF POST[-] RELEASE CONTROL.

{¶28} Mr. Rini asserts in his fifth assignment of error that the trial court erred in failing to mention post-release control at his sentencing hearing. The State concedes the trial court failed to make the proper notification pursuant to R.C. 2967.28(B), (C). We agree.

{¶29} The Supreme Court of Ohio stated in *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18, that

> in order to comply with separation-of-powers concerns and to fulfill the requirements of the postrelease-control-sentencing statutes, especially R.C. 2929.19(B) and 2967.28, a trial court must provide statutorily compliant notification to a defendant regarding postrelease control at the time of sentencing, including notifying the defendant of the details of the postrelease control and the consequences of violating postrelease control.

{¶30} Because Mr. Rini did not receive notification about his post-release control obligations, he is entitled to a hearing limited to the correct imposition of post-release control. *See id.* at ¶ 23; R.C. 2929.191. Mr. Rini's fifth assignment of error is sustained.

ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN ORDERING AN 18 MONTH SENTENCE CONTRARY TO THE SENTENCING PRINCIPLES IN OHIO REVISED CODE 2929.11[.]

{¶31} Mr. Rini asserts in his sixth assignment of error that the trial court erred in sentencing him to 18 months. We do not agree.

{¶32} A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, ¶ 26. The Court stated:

First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id.*

{¶33} Mr. Rini was sentenced to 18 months in prison, which is the maximum prison term for a fourth-degree felony. *See* R.C. 2929.14(A)(4). Mr. Rini's sole argument with respect to the validity of his 18 month sentence is that the trial court failed to comply with R.C. 2929.11(B) because Ms. Neuendorff received a much less severe sentence for her similar conduct. R.C. 2929.11(B) states in part that, "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders."

{¶34} Mr. Rini presented no evidence to the trial court indicating that Ms. Neuendorff was similarly situated to him or that Ms. Neuendorff received a disproportionately shorter

sentence. Accordingly, Mr. Rini's argument on appeal must fail. Further, the trial court, in sentencing Mr. Rini, noted that Mr. Rini's record revealed that he had "nine felony convictions, 16 misdemeanor convictions, three DUI convictions, six separate prison terms. He's found to be a parole violator on ten separate occasions. He committed the present offense one day before turning himself in to the county in order to get a 180-day jail sentence[.]" Mr. Rini has not asserted that the presentence investigation report was inaccurate or that the trial court's recitation of Mr. Rini's criminal history is inaccurate. Further, the presentence investigation report has not been made a part of the record on appeal. *See State v. Unik*, 9th Dist. No. 11CA009996, 2012-Ohio-307, ¶ 7. Based upon Mr. Rini's limited argument, and the fact that this Court has discovered nothing in the record to indicate Mr. Rini's sentence is contrary to law or that the trial court abused its discretion in imposing it, we overrule Mr. Rini's sixth assignment of error.

III.

**{¶35}** In light of the foregoing, we sustain Mr. Rini's fifth assignment of error and overrule his remaining assignments of error. The judgment of the Medina County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT


MOORE, P. J.
CONCURS.

CARR, J.
CONCURRING.

{¶37}  Although I concur in the majority opinion, I write separately to note that I would overrule the fourth assignment of error solely on the basis that Rini has not demonstrated that he was prejudiced by defense counsel's performance at trial.


APPEARANCES:

SEAN BUCHANAN, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.