[Cite as *State v. Jordan*, 2014-Ohio-2857.]

STATE OF OHIO        )            IN THE COURT OF APPEALS
                              )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                                 C.A. No.       27005

     Appellee

     v.                                         APPEAL FROM JUDGMENT
                                                ENTERED IN THE
CRYSTAL JORDAN                           BARBERTON MUNICIPAL COURT
                                                COUNTY OF SUMMIT, OHIO
     Appellant                                  CASE No.      12 CRB 02869

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

HENSAL, Presiding Judge.

{¶1} Appellant, Crystal Jordan, appeals her convictions in the Barberton Municipal Court. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} Ms. Jordan was observed by a Target loss prevention employee entering the store with her four-month-old infant, two of her sisters, her teenaged niece and her niece's friend. The employee monitored the group on video and in-person for approximately 45 minutes after his suspicion was aroused when he witnessed Ms. Jordan and the rest of the individuals indiscriminately place clothing into their shopping cart. When Ms. Jordan's niece attempted to push the shopping cart out of the store's entrance without paying for the merchandise, the employee apprehended her. Ms. Jordan was later arrested at a nearby restaurant after she and the rest of the group were asked to leave the store.

**{¶3}** She was charged with one count each of endangering children under Revised Code Section 2919.22(A), a first-degree misdemeanor, theft under Section 2913.02, a first-degree misdemeanor, and obstructing official business under Section 2921.31, a second-degree misdemeanor. After the close of the State's case-in-chief, the court granted the State's request to add an instruction on complicity to commit theft pursuant to Section 2923.03. The jury found Ms. Jordan not guilty of the theft offense but guilty of the remaining charges including complicity to commit theft. She was sentenced to a suspended jail sentence on the condition that she serve six months of community control. Ms. Jordan appeals and raises five assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING CRYSTAL JORDAN HER RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND OHIO CONSTITUTION, ARTICLE I, SECTION 10.

**{¶4}** Ms. Jordan argues in her first assignment of error that her constitutional rights were violated when the trial court allowed hearsay statements into evidence that implicated her in the theft. This Court agrees with Ms. Jordan that the testimony was improperly admitted, but concludes that the error was harmless.

**{¶5}** An accused's right to confront and cross-examine witnesses against her is guaranteed by the Sixth Amendment to the United States Constitution. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). Out-of-court statements that are testimonial in nature implicate the protections afforded by the Confrontation Clause. *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 19, citing *Melandez-Diaz v. Massachusetts*, 557 U.S. 305, 309-310 (2009). "An out-of-court statement is 'testimonial' when it 'would lead an objective witness reasonably

to believe that the statement would be available for use at a later time.'" *Id*., quoting *Melandez-Diaz* at 310. "More fundamentally, however, a 'testimonial statement' must assert the truth of the matter for which it is offered." *Id*., quoting *Melandez-Diaz* at 310. "In other words, when evidence is not intended for the purpose of establishing or proving some fact at trial, it does not fall within the ambit of 'testimonial statements' covered by the Confrontation Clause." *Id*. However, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford* at 59.

{¶6} Over the defense's objection, the lead investigating officer, Deputy Elisha Menefee, testified that, during questioning, Ms. Jordan's niece stated that it was Ms. Jordan who made her push the shopping cart out of the store's entrance. There is no dispute that the State did not produce the niece as a witness at trial. Accordingly, Ms. Jordan did not have an opportunity to cross-examine her niece on the content of her statement to Deputy Menefee.

{¶7} The State argues that the niece's statement was not hearsay as the statement was not offered to prove the truth of the matter asserted, but rather to explain the officers' conduct during the course of the investigation. Evidence Rule 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that are offered into evidence to explain an officer's conduct while investigating a crime are not, however, hearsay. *State v. Blevins*, 36 Ohio App.3d 147, 149 (9th Dist.1987). The Ohio Supreme Court has recognized that, "in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and

the statements cannot connect the accused with the crime charged." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 27.

{¶8}     Assuming arguendo that Deputy Menefee's testimony about the niece's statement was offered to explain her next steps in the investigation, and that the danger of unfair prejudice did not outweigh any probative value, it still fails the test set forth in *Ricks* as the statement directly implicates Ms. Jordan in the crime. *Id.*  Accordingly, this Court concludes that the statement concerning her role as the individual who allegedly told her niece to push the cart out of the door was testimonial.  Because the statement was testimonial in nature, its admission into evidence violated Ms. Jordan's constitutional rights under the Confrontation Clause.

{¶9}     "Although the court committed constitutional error, such error can be harmless in certain circumstances[.]" *Ricks* at ¶ 46.  Criminal Rule 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

> A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt.  Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence.  Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

(Citations omitted.)  *Ricks* at ¶ 46.

{¶10}   After reviewing the rest of the evidence offered against Ms. Jordan, this Court concludes that the error was harmless beyond a reasonable doubt.  The jury viewed the Target surveillance video, which revealed that Ms. Jordan removed hangers from clothing and placed items into the shopping cart without regard for their size, style or price.  The video further showed that, after a member of the group removed the infant from her carrier, Ms. Jordan conspicuously pulled the baby's blanket up over the carrier which another member of the group then pulled down in an effort to conceal its interior from view.  Ms. Jordan can be seen in the

video in the immediate vicinity of her niece and her niece's friend while they concealed clothing in the carrier under the blanket. Andrew Phillips, a Target loss prevention employee, testified that, in his opinion, Ms. Jordan appeared to be the primary person who selected items and who directed the other individuals' selections. He further testified that he observed her gather around the shopping cart with the rest of the group, sort the merchandise, and fold it either as small as possible or roll it in a way that suggested the items were to be concealed. According to Mr. Phillips, Ms. Jordan was standing at the cart when her sister and niece returned after taking infant formula and diapers off of the store shelf which they then concealed in the baby's diaper bag. Mr. Phillips later witnessed Ms. Jordan take a cart that contained clothing from the fitting room. In addition, the jury viewed video that showed Ms. Jordan assist another individual unlatch the infant's carrier from the initial cart it was in and place it in an empty cart, which her niece then attempted to roll out of the store.

{¶11} Given the video evidence and testimony from Mr. Phillips, who personally witnessed Ms. Jordan's actions in the store, this Court concludes that it was not reasonably possible that the hearsay statement testified to by Deputy Menefee carried enough weight with the jury to contribute to her complicity to commit theft conviction. Thus, the trial court's admission of the testimony was harmless error.

{¶12} Ms. Jordan also challenges testimony from Mr. Phillips that he determined that merchandise found in the trunk of the vehicle Ms. Jordan drove to the store was stolen as the deputies told him "that a few of the subjects * * * admitted that it came from our Target." He reiterated his testimony during cross-examination when he affirmed that "in questioning by the [d]eputies, * * * multiple * * * subjects * * * admitted that the merchandise was stolen from my specific Target." Ms. Jordan also maintains that testimony from Sergeant Patrick Hunt, who

testified that Deputy Menefee told him that Ms. Jordan's niece stated that Ms. Jordan drove the vehicle to the store, was hearsay. She argues that admission of these statements violated her constitutional rights under the Confrontation Clause.

{¶13} As she did not object to these statements at trial, she is limited to plain error review. *State v. Rini*, 9th Dist. Medina No. 12CA0045-M, 2013-Ohio-745, ¶ 12. *See also State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶ 35, quoting *State v. Scott*, 10th Dist. Franklin No. 05AP-1144, 2006-Ohio-4981, ¶ 11, fn. 4 ("Where preserved by objection, review of Confrontation Clause claims is for harmless error. Confrontation Clause claims not preserved by objection are viewed for plain error * * *."). Criminal Rule 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

> To correct a plain error, all of the following elements must apply: 'First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[ ]' [to the extent that it] * * * affected the outcome of the trial.'

*State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 64, citing *State v. Hardges*, 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 9.

{¶14} Assuming arguendo that admission of both Mr. Phillip's and Sergeant Hunt's testimony was plain error, this Court is not convinced that it affected the outcome of her trial due to the nature of the other evidence introduced at trial, as detailed above, that suggested Ms. Jordan was complicit in the theft from Target.

{¶15} Accordingly, this Court overrules Ms. Jordan's first assignment of error.

ASSIGNMENT OF ERROR II

THE WARRANTLESS SEARCH OF THE CAR JORDAN DROVE VIOLATED HER RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, MERITING REVERSAL OF HER CONVICTIONS.

{¶16} In her second assignment of error, Ms. Jordan argues that the impoundment and subsequent inventory search of the vehicle she drove to the store violated her constitutional rights. She concedes that this Court reviews her assignment of error under plain error as she did not file a motion to suppress or otherwise object to the admission of the evidence at trial. We do not agree that the impoundment and search of the vehicle amounted to plain error in violation of her constitutional rights.

{¶17} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution prohibit unreasonable searches and seizures. Subject to "a few specifically established and well-delineated exceptions," a search conducted without a warrant issued upon probable cause is per se unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

> [A] routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile.

*State v. Robinson*, 58 Ohio St.2d 478, 480 (1979). "To determine if an inventory search is valid, the court must first determine whether the police lawfully impounded the vehicle. A vehicle can be lawfully impounded when the occupant of the vehicle is arrested." *State v. Harper*, 9th Dist. Medina No. 12CA0076-M, 2014-Ohio-347, ¶ 10, quoting *State v. Robinson*, 9th Dist. Summit No. 19905, 2000 WL 1587007, *3 (Oct. 25, 2000). *But see State v. Huddleston*, 173 Ohio App.3d 17, 2007-Ohio-4455, ¶ 22 (10th Dist.) (holding that defendant's car was unlawfully

impounded when he was arrested for shoplifting as he was not in or near the vehicle when he was arrested). "This Court has rejected a challenge to an impoundment when there was no evidence of a pretextual motive and the impoundment was conducted pursuant to a standard police procedure." *Harper* at ¶ 10.

{¶18} Ms. Jordan argues that the vehicle was not lawfully impounded as she was arrested away from the vehicle, the vehicle was not left unattended for a significant amount of time so as to constitute a hazard, and it could have been driven out of the parking lot by someone else to avoid it being impounded. She advocates that, under these facts, the impoundment of the car was a pretext for a warrantless search.

{¶19} The Target store in question is located in Green, Ohio. Green Traffic Code 404.05(a)(7) authorizes law enforcement officers to remove and impound a vehicle when it is "left unattended either on public or private property due to the removal of an * * * arrested operator * * *[.]" Deputy Daniel Napier testified that, since he "knew that everyone was going to be placed under arrest, * * * it's our policy to tow any vehicles related to a crime."

{¶20} This Court concludes that the car was lawfully impounded. The plain language of Green Traffic Code 404.05(a)(7) authorized the deputies to legally impound the car due to Ms. Jordan's arrest. He also testified that it was the department's standard procedure to impound a car when the operator is arrested. Further, the testimony from Deputy Napier does not reveal a pretexual motive for impounding the car. According to Deputy Napier, he was not aware that Ms. Jordan's sister was seen on video leaving the store while carrying a purse and then re-entering the store several minutes later without the purse she previously carried. This fact is important because the subsequent inventory search of the vehicle revealed stolen merchandise.

**{¶21}** Having concluded that the car was lawfully impounded, we turn next to the validity of the inventory search. "The justification for inventory searches stems from three administrative caretaking functions: (1) protecting an individual's property while it is in police custody; (2) protecting the police from claims of lost, stolen, or vandalized property; and (3) protecting the police from danger." *Harper*, 2014-Ohio-347, at ¶ 11, quoting *Robinson*, 2000 WL 1587007, at *2 (Oct. 25, 2000). "[I]nventories pursuant to standard police procedures are reasonable." *Id.*, quoting *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976).

**{¶22}** Deputy Napier testified that he inventoried the entire car "per policy" to protect the department from civil liability for missing items and property damage. When he opened up the trunk during the inventory search, he discovered clothing and jewelry with store tags still attached to them. Deputy Napier also found a large purse underneath the clothing. According to him, he did not find any store bags or receipts during his search which would have indicated that the items were previously purchased. Mr. Phillips identified some of the items as coming from his Target store. The investigation subsequently revealed that some of the items came from a local Walmart store.

**{¶23}** Deputy Napier testified in generalities concerning the department's policy to search impounded vehicles. He did not discuss any specifics about the policy nor was a written copy of the policy submitted into evidence. Deputy Napier's testimony, however, suggests that the search was pursuant to the department's policy and in satisfaction of the department's caretaking functions. This Court does not agree that the inventory search constituted plain error in violation of Ms. Jordan's constitutional rights. Accordingly, Ms. Jordan's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

> THE TRIAL COURT SUA SPONTE AMENDED THE COMPLAINT IN JORDAN'S CASE TO ADD A COMPLICITY TO THEFT CHARGE. THIS DID NOT COMPLY WITH CRIM.R. 7, AND DEPRIVED JORDAN OF HER DUE PROCESS RIGHTS.

**{¶24}** In her third assignment of error, Ms. Jordan argues that the trial court erred when it permitted the jury to be instructed on complicity. She maintains that this instruction constituted a de facto amendment to the complaint to add an additional charge in violation of her due process rights. This Court disagrees.

**{¶25}** Criminal Rule 7(D) permits a court to amend a complaint at any time before, during, or after trial to correct a defect, imperfection, omission or any variance in the evidence as along as the change does not alter the name or identity of the charged offense. If the amendment changes the substance of the complaint, the defendant is entitled to a discharge of the jury, if empaneled, unless it is clear that she was not misled or prejudiced, or that her rights will be fully protected by either proceeding to trial or by a continuance to another date. Crim.R. 7(D).

**{¶26}** Under Revised Code Section 2923.03(A), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; * * * [or] (4) Cause an innocent or irresponsible person to commit the offense." The statute further provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). This Court has previously determined that "when the prosecution charges and tries an aider and abettor as a principal, a jury instruction on complicity may be given if the evidence adduced at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender." *State v. Adcox*, 9th Dist. Lorain No. 98CA007049, 2000 WL 422400, *3 (Apr. 19, 2000).

**{¶27}** The criminal complaint in this matter charged Ms. Jordan with theft under Revised Code Section 2913.02. At the close of the State's evidence, and over Ms. Jordan's objection, the trial court granted the prosecutor's motion to add a complicity instruction in conformity with the evidence introduced at trial. While Ms. Jordan argues that the State's request was a de facto amendment of the complaint to add a complicity charge, the transcript reveals that the State made it clear it was not seeking to amend the complaint. The jury was presented with a separate verdict form for the complicity charge, which they signed in finding her guilty.

**{¶28}** This Court concludes that the trial court did not effectively amend the complaint under Criminal Rule 7 to add a new charge as the instruction did not change the name or identity of the crime charged. Revised Code Section 2923.02(F) permits a complicity charge to be brought either on its own under the statute or as stated in terms of the principal offense. Further, our review of the evidence introduced at trial demonstrated that Ms. Jordan was complicit with the juveniles in carrying out the theft so as to warrant the instruction. Accordingly, her third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

JORDAN'S CONVICTIONS FOR CHILD ENDANGERING AND OBSTRUCTING OFFICIAL BUSINESS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND MUST BE REVERSED.

ASSIGNMENT OF ERROR V

JORDAN'S CONVICTIONS FOR CHILD ENDANGERING AND OBSTRUCTING OFFICIAL BUSINESS [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND MUST BE REVERSED.

{¶29} Ms. Jordan argues in her fourth and fifth assignments of error that her convictions for child endangering and obstructing official business were not supported by sufficient evidence and were against the manifest weight of the evidence. As her assignments of error are interconnected, we will address them together.

**Child Endangerment**

{¶30} This Court reviews a question of whether there is sufficient evidence to support a conviction de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The test for sufficiency requires a determination of whether the State has met its burden of production at trial." *State v. Collmar*, 9th Dist. Summit No. 26496, 2013-Ohio-1766, ¶ 7.

{¶31} Ms. Jordan was convicted of violating Revised Code Section 2919.22, which provides in part that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection or support." A "substantial risk" is defined as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶32} The State argues that Ms. Jordan violated her duty of care to her child by risking arrest when she participated in the shoplifting offense. Deputy Menefee testified that she charged Ms. Jordan with child endangering based on her involvement in the theft and the fact

that she left the store without any child-care supplies, like the carrier or the blanket, for her infant. According to Deputy Menefee, if a parent commits a crime, such as theft, in the presence of a child, the parent risks having that child placed in the custody of Children's Services. She admitted, however, that Children's Services determines if a child is taken into custody and that being arrested does not necessarily mean a defendant will lose custody of her child.

**{¶33}** Viewing the evidence in a light most favorable to the State, this Court concludes that there was sufficient evidence to convict Ms. Jordan of child endangering in violation of Revised Code Section 2919.22. Deputy Menefee's testimony could establish that Ms. Jordan violated her duty of care, protection or support to her child by committing a crime in the presence of her child and by leaving the store without the necessary provisions with which to keep her infant warm and safe. A rational trier of fact could have found that her actions presented a substantial risk to the health or safety of the child by subjecting the infant to a risk of harm or a potential threat to the infant's immediate safety due to her mother's arrest and by going out into the cold weather without adequate clothing or a safety seat, which would be needed if Ms. Jordan were to drive them back home from the store.

**{¶34}** We turn next to Ms. Jordan's argument that her child endangering conviction was against the manifest weight of the evidence. To make such a determination, this Court:

> [M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. The appellate court should only exercise its power to reverse a

judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Carr*, Summit No. 26661, 2014-Ohio-806, ¶ 28, quoting *State v. Adams*, 9th Dist. Summit No. 26009, 2012-Ohio-4382, ¶ 8.

{¶35} The State relied upon Deputy Menefee's testimony to establish the basis for Ms. Jordan's child endangering charge. She testified that she charged Ms. Jordan due to the fact that the child was present when Ms. Jordan participated in the theft. Because the child was present, according to Deputy Menefee, Ms. Jordan chanced her daughter's placement with Children's Services when she was arrested. She further testified that she also based the child endangering charge on the fact that Ms. Jordan left the store without the necessary items with which to care for her daughter. The State argues that this testimony demonstrates the presence of a substantial risk to the child's health and safety.

{¶36} While Deputy Menefee based the child endangering charge in part on the fact that Ms. Jordan left the store without any supplies for her infant, she acknowledged on cross-examination that she did not know that Mr. Phillips had asked Ms. Jordan to leave the store. Mr. Phillips testified that he asked Ms. Jordan and the rest of the group to leave the store because she was "get[ting] loud." Deputy Menefee further testified that Target took possession of the infant's carrier and blanket because it was in the cart that Ms. Jordan's niece attempted to push outside the store's doors. She acknowledged that the store would not release those items to anyone as they were evidence of the crime. Deputy Menefee's testimony reveals that her decision to charge Ms. Jordan with child endangering was made without knowledge of all the

relevant facts. Most importantly, she was not aware that Mr. Phillips asked Ms. Jordan to leave the store.

{¶37} We are mindful that the weight to be given the evidence is primarily within the province of the jury. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). However, Deputy Menefee's testimony exposes the fact that she based the child endangering charge in part on incomplete information. This Court cannot say, in this instance, that the jury was correct in crediting her testimony in convicting Ms. Jordan. "Credibility, intelligence, freedom from bias or prejudice, *opportunity to be informed*, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value." (Emphasis added.) *State v. Parish*, 5th Dist. Stark No. 2013CA00141, 2014-Ohio-1410, ¶ 27, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Deputy Menefee's testimony lacked facts that were critical to make an informed decision whether or not Ms. Jordan's acts violated a duty of care constituting a substantial risk to the health and safety of her child.

{¶38} Further, this Court notes that neither Deputy Menefee nor the other deputies testified that the child's physical safety was ever at risk during the crime itself. There was no evidence that the child was in distress, neglected or abandoned at any time during or after the theft or Ms. Jordan's complicity therein. While we cannot condone Ms. Jordan's actions, which occurred in the presence of her four-month-old infant and utilized the baby's supplies to conceal stolen merchandise, we conclude that the connection between the risk of potential placement with Children's Services and the existence of a substantial risk to the child's health and safety is too tenuous and speculative to support Ms. Jordan's conviction for child endangering. There was no evidence that Ms. Jordan's actions during the complicity in theft constituted a substantial risk to the health or safety of her child. Deputy Menefee's testimony demonstrated that the risk that

the child would be placed in the custody of Children's Services was speculative as that determination was made by that agency rather than by the investigating deputies. Her testimony revealed that being arrested does not automatically result in Children's Services taking custody of the child; it just means that a referral is made to the agency. Further, the potential for a parent's arrest cannot form the sole basis for a finding of substantial risk. *See State v. Allen*, 140 Ohio App.3d 322, 325 (1st Dist.2000) (concluding that father's arrest, while leaving seven-year old home alone for two minutes while he walked down the street to borrow butter, was an unexpected intervening event which did not demonstrate that he acted recklessly or created a substantial risk to the child.).

**{¶39}** After a careful review of the entire record, this Court concludes that this is the exceptional case where the jury clearly lost its way resulting in a manifest injustice. The State had to prove that there was a strong possibility that the health or safety of Ms. Jordan's child was at risk when she violated a duty of care, protection, or support. R.C. 2919.22(A) and 2901.01(A)(8). The State did not satisfy its burden of persuasion with competent evidence to establish these elements. Accordingly, we conclude that Ms. Jordan's conviction for child endangering was against the manifest weight of the evidence.

**Obstructing Official Business**

**{¶40}** Ms. Jordan was convicted of violating Revised Code Section 2921.31(A), which states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The Ohio Supreme Court has held that "[t]he making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede

the investigation of a crime is punishable conduct within the meaning of R.C. * * * 2921.31(A)." *State v. Lazzaro*, 76 Ohio St.3d 261 (1996), syllabus. This Court has concluded that, in order to have sufficient evidence to affirm an obstruction of official business conviction, there must be evidence that the defendant's actions hampered or impeded a law enforcement investigation and that the defendant intended such a result to occur. *See State v. Purdue*, 9th Dist. Summit No. 25766, 2012-Ohio-689, ¶ 18.

{¶41} Sergeant Hunt testified that he was the first officer to arrive on the scene. After Mr. Phillips gave him a "quick synopsis" of what occurred at the store, he drove around in an attempt to locate "four black females with a baby" in the immediate vicinity. Sergeant Hunt noticed a group matching that description at a nearby restaurant. He approached Ms. Jordan and asked her if she was just at the Target store, to which she answered, "[n]o." According to Sergeant Hunt, he next inquired how the group got to the restaurant, and Ms. Jordan replied that they arrived via bus. Based on her answers, which he believed to be untruthful, he detained the group in his police cruiser until the deputies could further investigate what had happened earlier at the store.

{¶42} Viewing the evidence in a light most favorable to the prosecution, this Court concludes that there was sufficient evidence from which a rational trier of fact could have found that the State proved beyond a reasonable doubt that Ms. Jordan violated Revised Code Section 2921.31(A). The evidence offered by the State supports a conviction that Ms. Jordan falsely told Sergeant Hunt that she neither drove to the store nor that she was at the store. Given the testimony about what occurred at the store and what was discovered in the trunk of the car, it is reasonable to infer that she did not want the deputies to know that she was connected to either in any way. Further, Sergeant Hunt's testimony demonstrated that her false answers impeded the

investigation as he had to detain the group pending further confirmation of what occurred earlier at the store.

{¶43} We turn next to Ms. Jordan's argument that her conviction is against the manifest weight of the evidence. Ms. Jordan argues that her conviction for obstructing official business is against the manifest weight of the evidence because she "arguably gave incorrect information" to Sergeant Hunt and that she did not undertake any affirmative acts to hamper or impede the investigation.

{¶44} Ms. Jordan testified in her own defense at trial. Her testimony conflicts with Sergeant Hunt's testimony on the circumstances of their encounter. According to Ms. Jordan, after the group was asked to leave Target, they went to the restaurant to call her niece's mother and to wait for her to arrive. She testified that Sergeant Hunt asked each member of the group whether they were all together. Her niece's friend told him "[m]aybe, maybe not," her one sister did not answer, and her other sister stated that they were not together. According to Ms. Jordan, she told the group to stop lying. She denies that she told Sergeant Hunt that she took the bus to the restaurant. Ms. Jordan testified that she told him that they arrived in a four-door car, but that she could not remember the make and model because she did not own the car.

{¶45} "A jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Wilson*, 9th Dist. Summit No. 26683, 2014-Ohio-376, ¶ 31, quoting *State v. Rice*, 9th Dist. No. 26116, 2012-Ohio-2174, ¶ 35. "A conviction is not against the manifest weight because the jury chose to credit the State's version of the events." *Id.*, quoting *State v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28. Based on our review of the record, this Court cannot say that the jury clearly lost its way in

crediting the testimony of Sergeant Hunt over Ms. Jordan's testimony on the issue of what she told him.

**{¶46}** Ms. Jordan's fourth assignment of error is overruled. Her fifth assignment of error is sustained solely on the basis that her conviction for child endangering was against the manifest weight of the evidence.

### III.

**{¶47}** Ms. Jordan's fifth assignment of error is sustained insofar as her conviction for child endangering was against the manifest weight of the evidence. Her remaining assignments of error are overruled. The judgment of the Barberton Municipal Court is affirmed in part, reversed in part, and the cause is remanded for a new trial.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶48} I concur in the majority's resolution of the first, second, and third assignments of error in full. I further agree with respect to the fourth assignment of error that, while the State presented sufficient evidence regarding the charge of child endangering, Jordan's conviction for that offense was against the manifest weight of the evidence. I dissent from the majority's conclusion, however, that Jordan's conviction for obstruction of official business was supported by sufficient evidence. Accordingly, I dissent from that portion of the opinion.

{¶49} I agree with the majority's recitation of the elements of the charge of obstruction of official business. R.C. 2921.31(A). "Every defendant is entitled to the unqualified right to have the prosecution prove every element of the offense charged beyond a reasonable doubt. If the state is not able to do so, the accused is entitled to an acquittal." *State v. Kilby*, 50 Ohio St.2d 21, 24 (1977). The State, therefore, must prove both that Jordan acted with purpose to hamper the investigation and that her actions in fact hampered the investigation. *See State v. Perdue*, 9th Dist. Summit No. 25766, 2012-Ohio-689, ¶ 18. In this case, I believe that the State failed to present any evidence to establish that Jordan's false statement to Sergeant Hunt impeded the investigation. Although he testified that he had to detain the group involved in the incident

pending confirmation of his suspicions, the police would have detained the group irrespective of Jordan's false statement. The police already believed that they had apprehended the proper suspects; that belief formed the basis of their continued detention. In the absence of any evidence showing how the investigation was actually hampered, I would conclude that Jordan's conviction for obstruction of official business was not supported by sufficient evidence. I would, therefore, reverse her conviction.

APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

MICHELLE L. BANBURY, Attorney at Law, for Appellee.