[Cite as *State v. Sykes*, 2018-Ohio-983.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 MA 0162 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RAYMOND SYKES, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                              Common Pleas of Mahoning County,
                              Ohio
                              Case No. 16 CR 879

JUDGMENT:                     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Paul J. Gains
                              Mahoning County Prosecutor
                              Atty. Ralph M. Rivera
                              Assistant Prosecuting Attorney
                              21 West Boardman St., 6th Floor
                              Youngstown, Ohio 44503

For Defendant-Appellant:      Atty. John D. Falgiani, Jr.,
                              P.O. Box 8533
                              Warren, Ohio 44484


JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                              Dated:  March 13, 2018

ROBB, P.J.

{¶1} Defendant-Appellant Raymond Sykes appeals his conviction for possession of heroin after a jury verdict in the Mahoning County Common Pleas Court. He contests both the sufficiency and the weight of the evidence to support his conviction. He also claims the heroin evidence should have been suppressed, raising plain error and ineffective assistance of counsel as no suppression motion was filed. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On July 9, 2016, Officer Dunkle was waiting at a red light in Youngtown with Officer Trimble as her passenger. Officer Trimble saw Appellant drive past in a Lexus SUV with one passenger. He knew Appellant from prior encounters, including driving under suspension encounters. (Tr. 138, 142, 156-157). Officer Trimble noticed the occupants of the Lexus staring at the police car and "uncomfortably * * * turning" their heads after passing the police car "as if they were trying to see what we were going to do, what our next move was." (Tr. 138). When the light changed, Officer Dunkle turned onto the one-way street behind Appellant.

{¶3} Officer Trimble checked the vehicle registration and discovered the vehicle had been reported stolen in Pennsylvania, which prompted other officers to respond to the scene. (Tr. 139, 158, 183). Officer Dunkle initiated a traffic stop and confirmed Appellant was driving under suspension. (Tr. 139-140, 185). Appellant said the vehicle belonged to his girlfriend, and he called her to ask her to come to the scene. (Tr. 157, 185). Appellant was arrested, as was his passenger who had an outstanding warrant. (Tr. 141). Since the vehicle had been reported stolen, the officers prepared to tow it. Based upon standard procedures and policies of the Youngstown Police Department, an administrative inventory search was conducted prior to towing. (Tr. 142, 187).

{¶4} In the back cargo section of the SUV was a child's Minnie Mouse backpack and a blue cardboard cylinder of table salt. Officer Trimble noticed the backpack contained a large object. Inside the backpack was a clear plastic Tupperware container containing marijuana. (Tr. 143). The salt cylinder contained a

white granular substance, which was likely salt, but it also had a false bottom, which unscrewed to reveal a hidden compartment. In the compartment was a baggie containing a tan substance which appeared to be heroin. (Tr. 143-144). Officer Trimble weighed the heroin at the scene and found it to weigh approximately 7.3 grams. (Tr. 146). Appellant said the drugs belonged to his girlfriend and were not his. (Tr. 163, 188).

{¶5} Appellant's girlfriend, Hattie Marrow, arrived at the scene stating she owned the vehicle and had not reported it as stolen. (Tr. 146-147, 186). The officers were unable to release the vehicle to her as it had been reported stolen in Pennsylvania and they could not verify the situation until a detective conducted an investigation. (Tr. 159-160, 186-187). She claimed any illegal items inside the vehicle belonged to her. Officer Trimble said she could not identify anything in particular that belonged to her except marijuana and a compact Glock firearm; however, no firearm was recovered. (Tr. 147-148, 160-161, 189). She did not mention a backpack, salt, heroin, or over $500 in cash recovered during the search. (Tr. 147-149).

{¶6} Upon arriving at the jail: Appellant asked Officer Trimble how much the heroin weighed; the officer answered it weighed over 7 grams; Appellant seemed shocked and asked if he weighed it with the bag; the officer said he did; and Appellant replied, "oh, okay, because that's only about a little over 6 grams of heroin." (Tr. 150-151, 190-191). A sample of the tan powder tested positive for heroin when a "NarcoPouch" test kit was used at the police station. (Tr. 173). Thereafter, the state's Bureau of Criminal Investigation (BCI) confirmed the presence of heroin in the substance weighing 6.21 grams (without the bag). (Tr. 201).

{¶7} The possession of heroin charge was tried to a jury in October 2016. The state presented testimony by Officer Trimble, Officer Dunkle, the officer who tested the heroin at the police station, and the BCI scientist who tested the heroin in the laboratory. Hattie Marrow testified for the defense. She explained she was Appellant's fiancée, they lived together, she was 26 years old, and he was the father of four of her nine children who all lived with them. (Tr. 225, 231). She said

Appellant had his own vehicle but he had a key to hers as they shared vehicles. (Tr. 229, 241).

{¶8} Ms. Marrow testified she drove to the scene (while "high") within ten minutes of Appellant's call to her. (Tr. 226, 228). She saw the officers searching the vehicle and told them it belonged to her. Ms. Marrow testified she told an officer there was marijuana in a Minnie Mouse backpack. The backpack belonged to one of her children. (Tr. 229). She said the officer asked her where exactly it was located within the vehicle but she could not remember because she was high. (Tr. 228). Ms. Marrow testified she was still feeling the effects of the heroin she purchased the night before and more recently smoked a "blunt." (Tr. 229-230, 240). As for her reference to a gun, she said she thought the friend who went with her to purchase the drugs left a gun in the car. (Tr. 238). Ms. Marrow claimed Appellant did not know the drugs were in the vehicle and did not know she resumed using drugs (shortly after she was released from a drug treatment facility in 2014); she said she hid the drugs from him because he would take the children if he knew she relapsed. (Tr. 231-232). She later learned at the police station that the vehicle had been reported stolen before she purchased it. (Tr. 233).

{¶9} The jury found Appellant guilty of possessing heroin in an amount over 5 grams but less than 10 grams, a third-degree felony. *See* R.C. 2925.11(A), (C)(6)(c). The court imposed a maximum sentence of 36 months in prison. Appellant filed a timely notice of appeal from the October 20, 2016 sentencing entry.

<u>SUFFICIENCY OF THE EVIDENCE</u>

{¶10} Appellant sets forth four assignments of error. The second assignment of error, which we are addressing first, provides:

"THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶11} We address the sufficiency argument before the manifest weight argument because if a conviction is not supported by sufficient evidence, the defendant cannot be retried due to the attachment of jeopardy. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (unlike a case reversed on weight of the evidence, which can be retried), citing *Tibbs v. Florida*, 457 U.S. 31, 41, 47, 102

S.Ct. 2211, 72 L.Ed.2d 652 (1982). All evidence admitted, whether erroneously or not, can be considered in determining whether the evidence was sufficient to sustain a guilty verdict. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 16-20, citing *Lockhart v. Nelson*, 488 U.S. 33, 35, 38, 40-42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

{¶12} Whether the evidence is legally sufficient to sustain a conviction is a question of law evaluating the adequacy of the evidence. *Thompkins*, 78 Ohio St.3d at 386. An evaluation of a witness's credibility is not involved in a sufficiency review as the question is whether the evidence, if believed, is sufficient (to support the contested elements). *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82. *See also State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *See Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶13} In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999); *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* The question is merely whether *any* rational mind could find the elements were established by the direct and circumstantial evidence. *See State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998) (placing emphasis on "any").

{¶14} The elements of the pertinent drug offense are as follows: knowingly obtain, possess, or use heroin. *See* R.C. 2925.11(A). The element regarding the amount of heroin is not contested. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.* "When knowledge of the existence of a particular fact is an

element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*

{¶15} Circumstantial evidence has the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). The surrounding facts and circumstances can be used to determine a defendant's intent, whether he is considered the principal offender or a complicitor. *Id.* at 485; *State v. Johnson*, 93 Ohio St.3d 240, 245, 754 N.E.2d 796 (2001). A person is complicit if, acting with the kind of culpability required for the commission of an offense, he aids or abets another in committing the offense. R.C. 2923.03(A)(2). *See also* R.C. 2923.03(F) (a person who is complicit can be prosecuted and punished as if he were a principal offender, even if the charge is stated in terms of the principal offense).

{¶16} Possession can be individual or joint. *Wolery*, 46 Ohio St.2d at 332 ("Possession of stolen property may be individual or joint, actual or constructive. Proof of control or dominion is essential. But control or dominion may be achieved through the instrumentality of another."). Even if the state cannot demonstrate a defendant's actual possession of an item, a defendant's constructive possession is sufficient. *See State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. *See also Wolery*, 46 Ohio St.2d at 329. The state must show the defendant was "conscious" of the object's presence as the "mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *Hankerson*, 70 Ohio St.2d at 91.

{¶17} A corresponding statute defines possess or possession as: "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Nevertheless, circumstantial evidence can be relied upon to establish constructive possession and (as

aforementioned) intent. *Treesh*, 90 Ohio St.3d at 485 (circumstantial evidence has the same probative value as direct evidence); *Hankerson*, 70 Ohio St.2d at 91-92 (at a time when circumstantial evidence had a stricter application). It is important to note the law prohibits inferring possession "solely" from mere access to the substance through ownership or occupation of the premises, but does not prohibit this inference from being used to help establish possession in combination with other relevant facts. *See* R.C. 2925.01(K).

{¶18} Appellant suggests by finding him guilty, the jury must have improperly inferred his possession "solely from mere access" to the substance through his mere occupation of the vehicle where the substance was found. He emphasizes the heroin was not on his person and claims it was not within his immediate reach while he was driving the vehicle, which belonged to another person who claimed the drugs belonged to her.

{¶19} However, considering all of the evidence in the light most favorable to the prosecution, a reasonable person could find Appellant knowingly possessed the heroin. Appellant was driving the vehicle, which belonged to his girlfriend. He had one passenger. They exhibited outward displays of nervousness in passing the police cruiser. The heroin was in a salt container in the back of the vehicle. The vehicle was an SUV (with no separated trunk compartment). Next to the salt container was a child's Minnie Mouse backpack containing what appeared to be marijuana. Drugs in a moving vehicle and in containers such as used in this case suggest Appellant's conscious dominion or control over the heroin; the situation suggests the drugs were intercepted by the officers mid-transport and there is no indication the drugs belonged to the passenger. In any case, we need not rely on merely these inferences as there is additional evidence.

{¶20} Appellant's girlfriend arrived at the scene asserting the vehicle belonged to her and was not stolen. Despite claiming anything illegal in the vehicle belonged to her, she was (according to the officer's testimony) unable to name specific items such as the salt container or the heroin. In any event, "[t]he state was not required to establish that Appellant owned the drugs, merely that they were in his

constructive possession." *State v. Nichols*, 7th Dist. No. 07 JE 50, 2009-Ohio-1027, ¶ 29. If Appellant had control of the heroin and was conscious of its presence, then he had constructive possession, even if the heroin was being transported for someone else or someone else owned it.

**{¶21}** Finally, the officer testified Appellant expressed shock when advised the recovered heroin weighed over 7 grams -- until he learned this weight included the bag, at which point Appellant expressed the heroin weighed closer to 6 grams. The evidence, if believed, allowed a rational person to conclude Appellant knowingly obtained or possessed the heroin found in the back of the SUV he was driving. Upon viewing the evidence in the light most favorable to the prosecution, a rational juror could have found the elements of the offense proven beyond a reasonable doubt. This assignment of error is overruled.

<u>WEIGHT OF THE EVIDENCE</u>

**{¶22}** Appellant's first assignment of error, which we moved to follow the sufficiency argument, alleges:

"THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶23}** Whereas a sufficiency review involves the state's burden of production, a weight of the evidence review involves the state's burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Id.* at 387 (it depends on the effect of the evidence in inducing belief but is not a question of mathematics).

**{¶24}** The appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387. This discretionary power of the

appellate court is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶25}** Where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution. The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses and the weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 389.

**{¶26}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶27}** Appellant emphasizes the heroin was in the back of an SUV and attempts to distinguish cases where the drugs were in closer proximity to the defendant. *See, e.g., State v. DeSarro*, 7th Dist. No. 13 CO 39, 2015-Ohio-5470, ¶ 42-44 (drugs found under rock near where defendant was standing); *State v. Pankey*, 7th Dist. No. 07 MA 2, 2008-Ohio-3091, ¶ 47 (defendant was "within feet of the crack which was sitting on the kitchen counter poorly concealed within a book"). Appellant points to the testimony of his fiancée and concludes her ownership claims were worthy of belief as was her insistence that Appellant did not know about the drugs. Appellant also complains the officer's suggestion that he flung the drugs into the back of the SUV after seeing the police cruiser was mere speculation as there

was no testimony he did so. On the latter point, the officer did not opine that Appellant flung the drugs into the back of the SUV. He was asked if it were possible to fling an item from the front to the back in this vehicle, as opposed to a vehicle with a separate trunk compartment. The question and answer did not cause the jury to lose its way. Nor did an unobjected-to example of constructive possession provided during voir dire.

{¶28} On the issue of credibility, the jury was able to see and hear the live testimony presented by the officers and Appellant's fiancée. Although his fiancée testified she told the police her heroin was in the vehicle, the jury could choose to believe the officer's testimony that she did not specify she had heroin in the vehicle. We note she testified she was under the influence when she arrived at the scene. It was also within the jury's province to reject her claim that she purchased the heroin the prior night for herself, left it in her vehicle, and Appellant did not know about it. She claimed to be hiding a heroin addiction from Appellant, who lived with her and her nine minor children. The fact they shared their vehicles does not necessarily support Appellant's cause (as there is less incentive to use your car to hide drugs from your paramour if you both drive that car).

{¶29} Lastly, the jury heard the officers testify about Appellant's pronouncements on the weight of the heroin upon arrival at the jail. The jury could find their testimony credible. Appellant's observations indicated he had knowledge of the heroin in the vehicle. That is, Appellant seemed surprised the heroin weighed over 7 grams and asked if the officer weighed the bag. Appellant expressed his belief the heroin without the bag weighed just over 6 grams. According to the testimony of a BCI scientist, the heroin (without the bag) weighed 6.3 grams. It was not extraordinary for the jury to conclude Appellant was aware of the heroin and had control over it as he drove it around.

{¶30} In sum, there was credible evidence Appellant knowingly possessed 6.3 grams of heroin. This is not the exceptional case where the evidence weighs heavily against the conviction requiring a new trial. A manifest miscarriage of justice is not

apparent, and there is no indication the jury lost its way in weighing evidence and evaluating credibility. Consequently, this assignment of error is overruled.

SUPPRESSION & INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶31}** Appellant contends the evidence derived from the inventory search should have been suppressed. The same arguments concerning a police department policy on opening closed containers are set forth in the third and fourth assignments of error, which provide:

"THE TRIAL COURT ERRED AND COMMITTED PLAIN ERROR IN ALLOWING THE ADMISSION OF EVIDENCE IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS."

"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL * * * IN FAILING TO FILE A MOTION TO SUPPRESS EVIDENCE * * *."

**{¶32}** Appellant points out the drugs were found in closed containers within the vehicle. The marijuana was found in a child's backpack, and the heroin was found in a salt container. Appellant claims the officers' testimony as to the standard procedure of the police department only explained the general departmental policy on an inventory search before impound and did not specifically refer to a policy on opening closed containers. He also suggests the search may have been motivated by bad faith as the officer knew Appellant and the officer's original interest in the vehicle was due to mere allegations of staring and turning to look at the officers. Appellant cites the Ohio Supreme Court's *Hathman* case for the premise that a closed container cannot be opened during an inventory search unless the search is conducted in good faith and there is a standard practice or procedure at the pertinent police department governing the opening of closed containers.

**{¶33}** In *Hathman*, the defendant filed a pretrial motion to suppress the contents of a white plastic bag found during the inventory search of a vehicle; the bag contained other small bags and a pill bottle which were also opened during the search. At the suppression hearing, an officer testified the standard procedure of the Ohio State Highway Patrol was to inventory the contents of an impounded vehicle before towing to ensure nothing is lost or stolen from the vehicle while in police

custody; the officer also said he was to open any locked vehicular compartments if there was a key.

**{¶34}** The Court found the contents of the bag should have been suppressed because there was no evidence "of any standardized policy or practice of the Ohio State Highway Patrol specifically governing the opening of closed containers found during inventory searches." *State v. Hathman*, 65 Ohio St.3d 403, 408, 604 N.E.2d 743 (1992). The Court acknowledged an inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement, which "derives from the principle that valid inventory searches involve administrative caretaking functions which serve important governmental interests in protecting property which is in police custody, in ensuring against frivolous claims of loss, stolen or vandalized property, and in guarding the police from danger." *Id.* at 405-406, citing *South Dakota v. Opperman*, 428 U.S. 364, 369-371, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

**{¶35}** Nevertheless, in order "[t]o satisfy the requirements of the Fourth Amendment of the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *Hathman*, 65 Ohio St.3d 403 at paragraph one of syllabus, citing *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Opperman*, 428 U.S. 364. The Court concluded: "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *Hathman*, 65 Ohio St.3d 403 at paragraph two of syllabus, citing *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), and *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

**{¶36}** Although no suppression motion was filed, Appellant claims the trial court committed plain error in admitting the evidence obtained in the inventory search. "Plain errors or defects affecting substantial rights may be noticed although

they were not brought to the attention of the court." Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 720 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804 (1978), paragraph three of the syllabus. An appellate court's invocation of plain error is discretionary and requires the existence of an obvious error which affected substantial rights. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23.

**{¶37}** The absence of testimony at trial on a specific policy governing the opening of closed containers during a vehicle inventory search would not indicate to a trial court that there was no such procedure. The state does not have an obligation at trial to affirmatively show evidence was legally obtained in the absence of a motion challenging the admission of the evidence. *Hathman* involved a motion to suppress the evidence presented at the suppression hearing. It did not involve the failure to file a suppression motion or an evaluation of an officer's trial testimony on the policies precipitating an inventory search.

**{¶38}** In one case, the defendant argued the trial court committed plain error by not sua sponte suppressing evidence found in a closed container during an inventory of a vehicle. Before overruling this argument, the Eighth District noted: the officer testified in generalities about the department's policy to search an impounded vehicle; he did not discuss any specifics about the policy; and a written copy of the policy was not submitted. Nevertheless, the court concluded the officer's testimony "suggests that the search was pursuant to the department's policy and in satisfaction of the department's caretaking functions." *State v. Jordan*, 9th Dist. No. 27005, 2014-Ohio-2857, ¶ 23.

**{¶39}** Here, the vehicle Appellant was driving was reported as stolen in Pennsylvania. Officer Trimble explained the vehicle had to be impounded because Appellant was being arrested for driving under suspension and was suspected of driving a stolen vehicle (and the passenger was being arrested on a warrant). Appellant's fiancée appears to have arrived to claim the vehicle after the inventory

search began. In any event, the officers explained the policy requiring them to impound the vehicle due to its status as having an active report of being stolen. Officer Trimble testified, "When it's reported stolen, it gets towed with a hold for auto theft. And then, you know, our - - those detectives go in and figure out who it's stolen from and whatnot and everything like that." (Tr. 142). He subsequently reiterated they were unable to verify the vehicle was not stolen so the situation required further investigation based on the prior police report. (Tr. 160). Officer Dunkle confirmed they had no choice but to impound the vehicle because it had been reported stolen. (Tr. 186-187).

**{¶40}** There is no indication the decision to impound the vehicle was performed in bad faith. Appellant refers to the lack of a traffic violation and the mere allegation he was acting nervous. However, the vehicle was stopped only after a check on the vehicle's registration showed it had been reported stolen. This constitutes reasonable suspicion for a stop. *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8, 22-24 (an officer's decision to stop a motorist for a criminal violation, including a traffic violation, need only be supported by a reasonable and articulable suspicion, not probable cause); *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) ("An officer may stop a motor vehicle to check a driver's license or vehicle registration if the officer has an articulable and reasonable suspicion that the motorist is unlicensed, the vehicle is improperly registered, or it or its occupants are otherwise subject to seizure for violating the law."). *See also State v. Campbell*, 8th Dist. No. 83787, 2004-Ohio-6858, ¶11 (officer had a reasonable, articulable suspicion to initiate a stop of a vehicle where the state database showed it was reported as stolen).

**{¶41}** Regarding the inventory process, Officer Trimble testified the police department had a procedural policy governing an inventory search: "Yes. As a liability we do an administrative inventory of the auto to note anything what was in there prior to us towing it. That way if something comes up missing or something like that, you know, and everything that's inventoried goes in there, you know, everything of value and stuff like that, we put in the report." (Tr. 142-143). He noted how the

backpack contained a large item and how it could have contained a laptop. (Tr. 143). As to the salt container with the hidden compartment in a false bottom, he pointed out this is where "[s]ome people put, like, jewelry and stuff like that to hide it." (Tr. 143). Officer Dunkle confirmed a vehicle inventory was part of the standard operating procedure "just to protect us." (Tr. 187).

**{¶42}** The trial testimony suggested the impoundment and inventory search was conducted in accordance with the police department's standard policy. *See Jordan*, 9th Dist. No. 27005 at ¶ 23. The failure of the trial court to sua sponte suppress the evidence discovered when two closed containers were opened during an inventory search was not plain error occurring during trial.

**{¶43}** Appellant also raises ineffective assistance of counsel in failing to file a suppression motion challenging the inventory search. Defense counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel per se. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. The failure to file a motion to suppress is subject to the standard two-pronged analysis for evaluating claims of ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Spaulding*, __ Ohio St.3d __, 2016-Ohio-8126, __ N.E.3d __, ¶ 94, citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Both deficient performance and prejudice must be established. *Strickland*, 466 U.S. at 687. If the performance was not deficient, then there is no need to review for prejudice, and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶44}** In addition to showing a reasonable probability that the result of the trial would have been different if the evidence had been suppressed, the defendant who complains about counsel's failure to file a suppression motion must prove there was a valid ground to suppress the evidence in dispute. *Spaulding*, __ Ohio St.3d __, 2016-Ohio-8126 at ¶ 94, citing *Brown*, 115 Ohio St.3d 55 at ¶ 65. "A claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record." *State v. Carter*, 7th Dist. No. 15 MA 0225, 2017-Ohio-7501,

¶ 78, citing, *e.g.*, *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001) (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal). *See also State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978) (the appellate court is limited to what transpired as reflected by the record on direct appeal).

**{¶45}** Obviously, the outcome would have differed had the drugs been suppressed. On the question of whether there was deficient performance and a reasonable probability the suppression motion would have been granted, Appellant states the officer only testified about a general policy requiring an inventory search before towing an impounded vehicle and did not specifically cite to a particular policy on the opening of closed containers.

**{¶46}** However, the officer did not state the police department lacked a specific policy on the opening of closed containers, as he was not asked. At most, the specifics of any policy for opening closed containers would be unknown. In such a situation, we cannot presume there was no policy for these circumstances and thus presume counsel was ineffective. *See, e.g., State v. Eastridge*, 9th Dist. No. 21068, 2002-Ohio-6999, ¶ 10 (cannot show ineffective assistance of counsel for failure to file suppression of inventory results where it is "contended that it is possible that the inventory search was procedurally defective because the [police department] may not have had a procedure or policy in place that would allow [the officer] to open the black bag containing the contraband."). Rather, we are to defer to counsel's judgment and presume counsel's decision fell within the wide range of professional conduct. *Strickland*, 466 U.S. at 687 ("Judicial scrutiny of counsel's performance must be highly deferential.")

**{¶47}** Defense counsel may have known that particular police department had a policy for opening closed containers and therefore decided not to call for a suppression hearing merely to generate a record. Furthermore, as addressed supra, the testimony that was presented at trial, in order to set the background of how the officers came to find drugs in the vehicle, suggested the inventory search was conducted in accordance with the standard department protocol. There is no

indication counsel's performance was deficient in failing to file a suppression motion and there is no indication the motion would have been granted. For the foregoing reasons, the record does not contain evidence of ineffective assistance of counsel, plain error is not apparent, and these assignments of error are overruled.

**{¶48}** The trial court's judgment is affirmed.


Donofrio, J.,concurs.

Waite, J., concurs.